478 P.2d 142

**STATE of Arizona, Appellee,**

**v.**

**Johnny CABRERA, Jr., Appellant.**

**No. I CA–CR 281.**

Court of Appeals of Arizona, Division 1.

Dec. 22, 1970.

Gary K. Nelson, Atty. Gen. by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Corbet & Esser by Fred R. Esser, Phoenix, for appellant.

HATHAWAY, Judge.

Appellant was found to be the father of complainant's child in a paternity suit in the Superior Court of Coconino County. Three assertions of error are raised which appellant believes call for reversal of the decision and dismissal of the complaint.

It is first contended that the superior court "erred in not directing a verdict for defendant when the evidence of complaining witness and supporting witness is indeterminative and highly self serving." Specifically it is claimed that complainant's testimony did not establish a prima facie case for the state. Our attention is directed to the testimony of complainant in the Transcript of Record which is as follows:

"Q. Is it your testimony that under oath during 1968 you did not have intercourse with any other man?

A. No."

---

\* \* \* \* \* \*

"Q. \* \* \*, I believe you testified that you did not have relations with any one else during 1968. Did you date any one else during 1968?

A. Yes."

The second question and response quoted above is said to have led the jury to believe she did not have relations with anyone else during this time. Appellant contends that "to allow a jury to determine the question or innocence of defendant is tantamount to a verdict based on speculation, and the emotional tenor of the jury."

We do not agree when we consider the following testimony:

"Q. Now, did you go with anyone else at this time?

A. No.

\* \* \* \* \* \*

Q. \* \* \*, I want you to be as specific as you can. Did you have intercourse with Johnny Cabrera in August of 1968?

A. Yes, I did.

\* \* \* \* \* \*

Q. Was it more than once?

A. Yes, it was.

Q. How many times a week during August approximately?

A. It was quite a few times.

\* \* \* \* \* \*

Q. How about during September, how many times?

A. I don't remember how many times.

Q. More than once?

A. Yes, uh-huh.

Q. Several times?

A. Several times.

Q. And for how many months prior to August and September had it been going on this regularly, do you have any idea, or years?

A. As often as that?

Q. Uh-huh.

A. For about three years.

Q. Now, during the month of August, 1968, did you have intercourse with any other person?

A. No.

Q. Are you absolutely positive about that?

A. I am positive.

Q. How about during September, 1968?

A. No.

Q. Absolutely no one?

A. Huh-uh."

■ In determining whether a directed verdict should have been granted by lower court to defendant, we must view the evidence most strongly against defendant and most favorably to the plaintiff and all evidence by the plaintiff and all reasonably drawn inferences from such evidence we must assume to be true. Bailey v. Montgomery Ward and Co., 6 Ariz.App. 213, 431 P.2d 108 (1967); Figueroa v. Majors, 85 Ariz. 345, 338 P.2d 803, 804 (1959). Viewing the testimony accordingly, a prima facie case was established and defendant was not entitled to a directed verdict.

■ The second argument is that the judge should not have allowed the jury to view the 3½ month old child to show resemblance between the child and the defendant. Whether a child in a paternity action should be exhibited to the jury to show resemblance to the defendant is largely in the discretion of the trial court, and the jury is the sole judge of the evi-

dence, its weight, and the credibility of witnesses. Roberts v. State, 205 Okl. 632, 240 P.2d 104 (1951). Juries are able to take into account the age of the child, any similarities, and therefore give such evidence its proper weight. Objections should go only to the weight testimony of this nature will have and not to its relevancy or competency. 10 Cal.Jur.2d 100.

Our feelings on this point are best summed up by the following:

"We see no reason why they [the jury] should not have been given the benefit of personal observation of the parties and we have not been referred to any authority to the effect that such an order of the court is improper or prejudicial.

\* \* \* \* \* \*

The jurors were entitled to the ocular demonstration ordered by the court, and it will be assumed that they exercised their powers of observation rather than of imagination." Berry v. Chaplin, 74 Cal.App.2d 652, 169 P.2d 442, 452 (1946).

■ Final assignment of error is that the mother should not have been allowed to give her opinion concerning resemblance between the child and the defendant. This evidence was properly received for whatever it was worth. The objections go to the weight and no rule of evidence operates to exclude such evidence. 40 A.L.R. 101. See Wigmore on Evidence, Vol. VII, § 1974. The jury was further aided in determining the witness' accuracy since they were able to view the child personally.

Affirmed.

HOWARD, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.