[redacted]

496 P.2d 141

**STATE of Arizona, Appellee,**

**v.**

**Joe MESQUITA, Appellant.**

**No. 1 CA-CR 425.**

Court of Appeals of Arizona, Division 1, Department A.

April 26, 1972.

Rehearing Denied June 9, 1972.

Review Denied July 13, 1972.

[redacted]

[redacted]

**152**

Moise Berger, Maricopa County Atty., by James S. Tegart, Deputy County Atty., for appellee.

John Joseph Relihan, Phoenix, for appellant.

STEVENS, Presiding Judge.

After a jury trial, Joe Mesquita, the appellant herein and hereafter referred to as the defendant, was adjudged to be the father of a boy born on 3 October 1970. The mother testified the child was a full-term child, and that he was 21" long and weighed 8 lbs. 5 ozs. at birth. The terms of the judgment fulfilled the requirements of A.R.S. § 12–845 as that section existed prior to the 1971 amendments. The defendant appealed. His opening brief presents the following questions for our consideration:

"I. Did the Trial Court err in refusing to allow the Defendant to ask the complainant upon Cross-Examination whether she had had sexual intercourse with W. O. during the Summer of 1969? (In this opinion we use the initials only of this man.)

"II. Did the Trial Court err in allowing the complainant's baby to be shown to the jury in the place of expert testimony and for requiring the Defendant to stand so that the jury could compare the so-called resemblance between the baby and Defendant?"

The mother of the child swore to a complaint before a Justice of the Peace pursuant to A.R.S. § 12–841, also prior to the 1971 amendment. The complaint was sworn to on 10 June 1970 and alleged that the defendant was the father of her unborn child. The defendant appeared before the Justice of the Peace and in a sworn affidavit acknowledged that he was the father.

The paternity matter was sent to the Superior Court in which the defendant entered a plea of not guilty and the trial was eventually conducted to a jury on 12 April 1971. The voir dire of the jury is included in the reporter's transcript of the trial. All 12 jurors were married persons, seven women and five men. Each of the women was a mother and collectively they had 15 children. Three of the men were fathers and collectively they had 10 children.

The parties were introduced by W. O. with whom the mother had been very friendly, the introduction being about 9 October 1969.

The defendant was and remained a married man with a family. The mother at all times had been and remained single. She was over the age of consent. The defendant spoke to her of his domestic problems and advised her that he was contemplating a divorce. The exact date that the mother and the defendant had their first date is not clear. For a time they dated every other night, then twice a week, then once a week and they finally ceased dating about April 1970. The number of times that they engaged in sexual intercourse is not established, but the testimony of both parties shows numerous acts of intercourse during December 1969 and January and February 1970. Both parties testified that no measures were used to prevent conception. The mother's last menstrual period was about the end of the first week in January. She secured medical verification of the fact of pregnancy in February and advised the defendant. They discussed names for the

child, whether the child be a boy or a girl. He contributed $25 toward the expenses and promised more money if he could afford it. During the trial he was questioned with reference to the affidavit which he had signed in the Justice Court and he explained that he was not sure that he was the father and that he felt that he could be released without bond if he admitted paternity thereby saving his job.

With one or two possible exceptions each of the acts of intercourse had taken place in the defendant's car. The mother denied that she had been with W. O. since she started dating the defendant and she specifically denied that she had been in an automobile with him in December 1969. The defendant testified that one evening as he was preparing to call for the mother he had seen W. O. and the mother parked near the mother's home in W. O.'s car. There was no testimony as to any indication of intercourse between W. O. and the mother.

## SUMMER OF 1969

On cross-examination the mother was asked whether she had had sexual relations with W. O. The objection was made that the fact of such a relationship would be immaterial unless it could be shown to have taken place in December 1969 or in January or in February 1970. The objection was sustained. In the absence of the jury the defendant made an offer of proof. The offer of proof was that the defendant could show the fact of intercourse with W. O. in the summer of 1969. He urged that since the mother and the defendant had had intercourse in the defendant's car, that the fact that W. O. and the mother were seen in W. O.'s car in December made it appropriate to ask whether there had been intercourse between these persons during the summer of 1969. The trial court was correct in sustaining the objection. The previous chastity of the mother was not an issue. Whether she had engaged in intercourse with W. O. so far removed from the date of the birth of the child could not establish facts which would

cast doubt upon the defendant's responsibility for the conception of the child.

## EXHIBITING THE CHILD

Without objection, the mother testified that the child looked like the defendant. The State requested leave to permit the mother to bring the child into the courtroom and show the child to the jury while the defendant stood. The defendant urged an objection based upon Almeida v. Correa, 51 Haw. 594, 465 P.2d 564 (1970). The objection followed the reasoning of the majority opinion in that case and urged that it was error to exhibit the child in the absence of some scientific evidence to support the procedure. We agree with the dissent in that case. We also agree with State v. Cabrera, 13 Ariz.App. 527, 478 P.2d 142 (1970), wherein this Court stated:

"Whether a child in a paternity action should be exhibited to the jury to show resemblance to the defendant is largely in the discretion of the trial court, and the jury is the sole judge of the evidence, its weight, and the credibility of witnesses. Roberts v. State, 205 Okl. 632, 240 P. 2d 104 (1951). Juries are able to take into account the age of the child, any similarities, and therefore give such evidence its proper weight. Objections should go only to the weight testimony of this nature will have and not to its relevancy or competency." 13 Ariz.App. at 529, 478 P.2d at 144.

In denying the motion for a new trial, the trial judge stated that he preferred the rule announced by the majority opinion in the Hawaii decision but felt that he was bound by the Arizona rule. He stated:

"In this instance there was (sic) no apparent racial characteristics which would increase the probability that the baby was the child of the defendant."

If there was no resemblance of a racial character there could be no error. In Arizona exhibiting the child to the jury in a paternity case is not mandated but lies in the sound discretion of the trial judge.

There· are areas in which the testimony of the State's witnesses and the testimony of the defendant and his witness were inconsistent. The jury resolved the issues in favor of the State and from a reading of the record it is hard to see how a different result could have been reached.

Affirmed.

CASE and DONOFRIO, JJ., concur.