OPINION
HOWARD, Judge.
This appeal from a finding of paternity raises the following questions: (1) Whether the presumption of legitimacy was overcome; (2) whether it was appropriate to admit resemblance evidence, and (3) whether the trial court was correct in admitting the results of HLA blood tests and in admitting calculations of the probability of paternity. We affirm.
PRESUMPTION OF LEGITIMACY
In Arizona the presumption of legitimacy is a rebuttable presumption. Anonymous v. Anonymous, 10 Ariz.App. 496, 460 P.2d 32 (1969). The burden of overcoming the presumption of legitimacy is upon the person challenging it, Coffman v. Coffman, 121 Ariz. 522, 591 P.2d 1010 (App.1979), and this must be established by clear and convincing evidence. Coffman v. Coffman, supra; Pyeatte v. Pyeatte, 21 Ariz.App. 448, 520 P.2d 542 (1974).
The presumption of legitimacy may be overcome by proper and sufficient evidence showing that during the period when conception must have taken place the husband did not have sexual intercourse with his wife. Coffman v. Coffman, supra. The only evidence in this case of the husband’s non-access to the wife was the testimony of Miss Munoz that she had not seen or heard from her husband Carlos Munoz for approximately ten years and that in fact she lived in Arizona and Mr. Munoz lived in Mexico and was unable to enter this country because his passport had been revoked. This evidence was uncontradicted and apparently was believed by the trial court.
While it is true that Miss Munoz is an interested party, she is competent to testify despite the fact that this is a paternity suit, as the “Lord Mansfield rule” no longer applies. That rule prevented either the father or the mother of a child from testifying as to legitimacy and was abolished in Arizona in Coffman v. Coffman, supra. The evidence was competent and *395 uncontradicted. We find no abuse of discretion in the trial court's decision to accept it.
RESEMBLANCE EVIDENCE
Appellant asks the court to reconsider its decision in State v. Cabrera, 13 Ariz.App. 527, 478 P.2d 142 (1970), allowing evidence of resemblance to be admitted in paternity cases. In this case the child, Renee was led into the court and stood next to appellant. In addition, the child’s mother testified as to the resemblance between the child and appellant and the court admitted photographs of Renee and photographs of appellant’s admitted children when they were less than five years old. We decline appellant’s invitation to reconsider. As the court said in State v. Cabrera, supra:
“Whether a child in a paternity action should be exhibited to the jury to show resemblance to the defendant is largely in the discretion of the trial court, and the jury is the sole judge of the evidence, its weight, and the credibility of the witnesses. (citation omitted) Juries are able to take into account the age of the child, any similarities, and therefore give such evidence its proper weight. Objections should go only to the weight testimony of this nature will have and not to its relevancy or competency.” 13 Ariz.App. at 529, 478 P.2d 142.
In addition the court in Cabrera stated that the receipt of the mother’s opinion as to the resemblance between the child and the defendant was not error and that objections should go only to the weight and not to the admissibility of such evidence. We feel that the same reasoning should be applied to resemblance evidence when it pertains to the children of the defendant as well as to the defendant himself.
HLA TESTING AND PROBABILITY OF PATERNITY CALCULATIONS
Appellant’s next contention is that the court erred in admitting calculations of the probability of paternity based upon HLA blood tests run by the state’s expert witness. HLA testing stands for Human Leucocyte Antigen testing and is a form of tissue typing which is done by taking a blood test. It is able to eliminate a larger portion of the population than the better known ABO blood typing. See Ellman and Kaye, Probabilities and Proof: Can HLA and Blood Group Testing Prove Paternity? 54 N.Y.L.Rev. 1131.
Assuming that a putative father is not ruled out by HLA testing, then statistical analysis of the different factors or haplotypes can provide other sorts of information. For example, by determining what percentage of the population has a particular haplotype you can statistically determine the probability that a particular individual would be excluded as the father. In addition by taking into account other information such as the number of persons who could conceivably be the father, it is possible to determine the probability that a particular person is indeed the father. This is called a probability of paternity. In order to determine the probability of paternity, however, the other non-medical evidence referred to above must be expressed statistically. That is, it must be expressed in terms of the probability from non-medical evidence that a particular person is the father. Ellman and Kaye, supra, at 1147-52. For example, if a woman has sexual intercourse with two men during the time that it is physically possible for her to have become pregnant, then the probability that either one of them is the father without taking into account any blood testing is 50 per cent. It is the use of this probability of paternity calculation to which appellant objects.
The problem with admitting statistical or scientific evidence such as the probability of paternity calculation is not that it is not relevant. As Udall and Livermore state: “Because ‘science’ is often accepted in our society as synonymous with truth, there is a substantial risk of over weighting by the jury. The rules concerning scientific evidence are aimed at that risk.” M. Udall & J. Livermore, Arizona Practice — Law of Evidence, § 102 (2nd Ed. *396 1982). Rule 403, Arizona Rules of Evidence, 17A A.R.S., allows the exclusion of relevant evidence if its probative value is outweighed by the danger of unfair prejudice or confusion. Appellant claims that the HLA tests and calculations of probability of paternity should have been excluded for these reasons. We do not agree.
The HLA test is a generally accepted test in the scientific community and in the courts. See Cramer v. Morrison, 88 Cal. App.3d 873, 153 Cal.Rptr. 865 (1979); Carlyon v. Weeks, 387 So.2d 465 (Fla.App. 1980); Comm. v. Blazo, 10 Mass.App. 324, 406 N.E.2d 1323 (1980); Malvasi v. Malvasi, 167 N.J.Super. 513, 401 A.2d 279 (1979); Tice v. Richardson, 7 Kan.App.2d 509, 644 P.2d 490 (1982); Crain v. Crain, 104 Idaho 666, 662 P.2d 538 (Idaho 1983); Turek v. Hardy, 458 A.2d 562 (Pa.Super.1983). The danger of introducing complicated statistical evidence of this type has been thoroughly discussed in Justice Gordon’s dissent in State v. Garrison, 120 Ariz. 255, 585 P.2d 563 (1978), and appellant cites this case to show that these probabilities should not have been admitted. However, in that case the statistics given to the jury were not figured by the expert witness himself and were merely given as taken from “learned treatises.” In the instant case, however, the bases of the statistical calculations were clearly explained to the trier of fact. The court was not merely told what the probability of paternity was. Rather it was explained to the court how to calculate the probability of paternity depending upon the weight which the court itself chose to place upon the evidence that was available in addition to that produced by the HLA testing. The expert also clearly explained both the procedure and meaning of the HLA test and it is clear from the record that the trier of fact had sufficient information and explanation to utilize this expert scientific testimony and to give it the appropriate weight. We find no error in the admission of the probability of paternity calculations.
Affirmed.
BIRDSALL, C.J., and HATHAWAY, J., concur.