**Kathy BORLAND and the State of Utah, By and Through UTAH STATE DEPARTMENT OF SOCIAL SERVICES, Plaintiffs and Respondents,**

**v.**

**Raymond CHANDLER, Defendant and Appellant.**

**No. 19066.**

Supreme Court of Utah.

Feb. 4, 1987.

Randall Gaither, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., David E. Yocum, Salt Lake Co. Atty., Salt Lake City, Sandy Mooy, Sandy City Atty., Sandy, for plaintiffs and respondents.

ZIMMERMAN, Justice:

Defendant Raymond Chandler appeals from a jury verdict finding him to be the father of a child of plaintiff Kathy Borland. The jury also awarded Kathy Borland and the State Department of Social Services damages for support of the minor child. Chandler asserts that the trial court erred in allowing the child to be exhibited to the jury so that it might determine whether the child resembled him. He also argues that the action was barred by laches. We hold that the action was not barred by laches, but reverse and remand because an inadequate foundation was laid for allowing the jury to see the child in person.

Beginning in January or February of 1973, Chandler and Kathy Borland began dating. They saw each other for several

months and regularly had sexual intercourse. In the late summer or early fall of 1973, Chandler left Utah to work on a construction site in Rock Springs, Wyoming. Borland discovered she was pregnant in October of 1973. On June 8, 1974, Borland bore the child whose paternity is at issue here.

This action was begun by Borland and the Utah State Department of Social Services in 1980. Trial was held in 1983, at which time Borland testified that she had sexual intercourse with Chandler when he returned to Utah from Rock Springs, Wyoming, on weekends during August and September of 1973. She also testified that she did not have sexual intercourse with men other than Chandler from June of 1973 until the birth of the child. Borland testified that after she informed Chandler of her pregnancy, he offered at various times to pay for an abortion, marry her, support her and the child, and at one time offered her $100 to tell the State that he was not the father. Borland also asserted that Chandler acknowledged his paternity when he visited her at Christmas in 1974. Borland's mother testified that Chandler told her that he had offered to marry Borland. Results of an HLA test established that Chandler was not excluded as a possible biological father of the child.

Chandler testified that although he returned to Utah upon occasion after moving to Rock Springs, he did not have sexual intercourse with Borland after July of 1973. He denied having offered to pay for an abortion or to marry Borland. One witness testifying on Chandler's behalf stated that he had seen Borland with a number of other male companions in September and October of 1973, after Chandler left Utah.

At the beginning of the trial, Chandler sought an order prohibiting the child's exhibition. The motion was argued at length. The State's attorney represented to the court that the child would be exhibited only while Borland pointed out specific physical similarities between Chandler and the child. The court then dismissed Chandler's motion. During trial, the child was allowed in the courtroom for about five minutes during which time his mother identified him. No testimony was introduced relating to specific resemblances between Chandler and the child. At the conclusion of the trial, the jury returned a verdict against Chandler. This appeal followed.

Chandler first argues that the child should not have been exhibited to the jury. He urges this Court to adopt the rule of *Almeida v. Correa*, 51 Hawaii 594, 465 P.2d 564 (1970). There, the Hawaii Supreme Court ruled that the exhibition of a child to establish resemblance was improper and that only expert evidence relating to specific resemblances would be admissible. *Id.* 465 P.2d at 571. If the *Almeida* rule is not adopted, Chandler contends that the exhibition of the child was nonetheless improper under the standard set forth in *State v. Anderson*, 63 Utah 171, 224 P. 442 (1924), in which this Court approved the trial court's admission of independent evidence as to "specific resemblances of the child to the putative father, and thereafter permitted the child to be exhibited to the jury as evidence." 63 Utah at 174–75, 224 P. at 443.

The rules governing the exhibition of a child to establish paternity vary widely from one jurisdiction to another. Some prohibit exhibition altogether, while others allow a child of any age to be exhibited. *See generally* Annot., 55 A.L.R.3d 1087 (1974). The Hawaii Supreme Court's *Almeida* rule flatly prohibiting exhibition is based upon that court's finding, drawn from the current literature, that "the link between parent and child can be discerned only in ... very specific instances and not by evidence of general resemblance or by a comparison of individual features." 465 P.2d at 569. The Hawaii court concluded as follows:

> The identification of a physical characteristic, whether that characteristic is in fact hereditary, what other factors may have helped shape it, and how the characteristic in question is linked to a similar characteristic possessed by the alleged parent are all questions for experts....

*Id.* at 570. While the *Almeida* rule has been followed in a few states, *see, e.g., People in re R.D.S.*, 183 Colo. 89, 514 P.2d 772, 774 (1973); *cf. Commonwealth v. Kennedy*, 389 Mass. 308, 450 N.E.2d 167 (1983), it has not been widely accepted. *See State v. Mesquita*, 17 Ariz.App. 151, 496 P.2d 141, 143 (1972); *Glascock v. Anderson*, 83 N.M. 725, 497 P.2d 727, 728–29 (1972). Although the scientific data currently available provides support for the ruling in *Almeida*, we are not persuaded that this evidence is sufficiently unanimous to justify a departure from the *Anderson* standard. *Cf. State v. Long*, 721 P.2d 483 (Utah 1986). In our view, the relatively cautious approach of *Anderson* to child exhibition strikes a sound middle ground between prohibiting exhibition of a child altogether and allowing exhibition regardless of age or other indicia of reliability, and the *Anderson* standard provides sufficient safeguards to protect against gross speculation on the part of the jury.

■ The issue, then, is whether the trial court properly allowed the child to be exhibited to the jury under *Anderson.* We conclude that it did not. There is no indication in the record that the trial court found that the child had the necessary "settled features." *State v. Anderson*, 63 Utah at 174, 224 P. at 443. More critically, no evidence regarding specific resemblances between Chandler and the child was introduced prior to the child's exhibition or even while the child was in front of the jury. *Id.* Under these circumstances, the trial court abused its discretion in allowing exhibition of the child. Aside from this resemblance evidence, the case turned solely upon the credibility of Borland, Chandler, and their respective witnesses. Because of the paucity of other evidence, we cannot predict how the jury would have decided the matter absent this error. Therefore, the case must be reversed and remanded for a new trial.

■ Chandler next argues that a new trial would be improper because the paternity action, instituted seven years after the child's birth, is barred by laches. He asserts that the State's failure to prosecute the action in a more timely fashion was prejudicial because the lapse of time has prevented him from gathering and producing documents and witnesses essential to his defense. The State and Borland, relying upon *Zito v. Butler*, 584 P.2d 868 (Utah 1978), argue that laches has no application to an action created by statute. While we conclude that laches may apply to a statutory action, the facts in the present case are not sufficient to invoke it.

The principle relied upon by the plaintiffs here has its roots in the common law distinction between law and equity. At common law, an equitable defense could not be raised to a legal action, and because a statutory action was legal in nature, equitable defenses would not apply. *See* 27 Am.Jur.2d *Equity* § 154 (1966). This seems to be the theory behind *Zito*, a per curiam opinion. However, Utah long ago abolished any formal distinction between law and equity. *See* Utah R.Civ.P. 2. It is well established that equitable defenses may be applied in actions at law and that principles of equity apply wherever necessary to prevent injustice. *Hilton v. Sloan*, 37 Utah 359, 374–75, 108 P. 689, 694–95 (1910); *see generally Marlowe Investment Corp. v. Radmall*, 26 Utah 2d 124, 485 P.2d 1402 (1971); *Williamson v. Wanlass*, 545 P.2d 1145 (Utah 1976). Therefore, it is clear that under appropriate circumstances, laches may bar an action for paternity. Even the majority opinion in *Nielsen ex rel. Department of Social Services v. Hansen*, 564 P.2d 1113, 1114 (Utah 1977), cited by *Zito*, recognizes in dictum that laches might apply in a paternity action. Therefore, we conclude that to the extent that *Zito* stands for the proposition that an equitable defense is not available, it is an incorrect statement of the law and is overruled.[1]

1. *Zito's* analysis of the legal principles applicable to the time within which a paternity action must be instituted is weak. A better reasoned and more recent statement of the law may be found in *Szarak v. Sandoval*, 636 P.2d 1082, 1084–85 (Utah 1981).

■ To successfully assert a laches defense, a defendant must establish both that the plaintiff unreasonably delayed in bringing an action and that the defendant was prejudiced by that delay. *Papanikolas Brothers Enterprises v. Sugarhouse Shopping Center Associates*, 535 P.2d 1256, 1260 (Utah 1975). In this case, Chandler asserts that because of the time lapse, he was unable to contact witnesses material to his defense and was unable to locate time cards which would have established that he did not travel from Rock Springs to Salt Lake City every weekend. Argument alone is insufficient to persuade us that Chandler was prejudiced, and he had made no factual showing to support the argument. Chandler did not establish that he attempted and was unable to contact witnesses. Moreover, he had access to company records prior to trial, and his supervisor testified on his behalf at trial. There is nothing to indicate that the testimony equivalent to the evidence established by the time cards could not have come in through the supervisor. In addition, Chandler conceded that he returned to Utah upon occasion in the fall of 1983; therefore, the introduction of time cards to show that he did not return *every* weekend would not have materially assisted in his defense. Under the circumstances, no prejudice is apparent and further prosecution is not barred by laches. *See Doe v. Roe*, 705 P.2d 535, 541 (Hawaii Ct.App.1985).

Reversed and remanded.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, J., concurs in the result.