2014 UT App 264

## THE UTAH COURT OF APPEALS

ANDREW VEYSEY,
Petitioner and Appellee,
*v.*
ALEXIS VEYSEY,
Respondent and Appellant.

Opinion
No. 20130726-CA
Filed November 14, 2014

Third District Court, Salt Lake Department
The Honorable L.A. Dever
No. 984907587

Alexis Veysey, Appellant Pro Se

Rebecca Long Okura and Jenna Hatch, Attorneys
for Appellee

JUDGE JAMES Z. DAVIS authored this Opinion, in which JUDGES
GREGORY K. ORME and J. FREDERIC VOROS JR. concurred.

DAVIS, Judge:

¶1     Alexis Veysey (Mother) challenges the district court's adoption of the domestic commissioner's recommendation regarding reimbursement of daycare expenses for the parties' children. We vacate the district court's order and remand for further proceedings.

BACKGROUND

¶2     The parties divorced in September 1999. Pursuant to Utah Code section 78B-12-214, the parties' divorce decree required Andrew Veysey (Father) to reimburse Mother for half of "all reasonable monthly day care expenses actually paid by [Mother] and incurred on behalf of the parties' minor children as a result of [Mother's] employment and/or occupational or career training."

The decree did not require Father to pay a defined monthly amount of daycare expenses, but rather required him to reimburse Mother within ten days of receiving a receipt for daycare expenses. The decree contained no provision requiring Mother to provide such receipts within a particular time frame.[1]

¶3 On March 5, 2013, Mother filed a Motion for Order to Show Cause requesting a judgment for daycare arrearages accrued between September 2002 and June 2006. During some of this time period, the children attended full-day kindergarten at Challenger, a private school. A hearing was held before a domestic commissioner on April 1, 2013. The commissioner issued a recommendation concluding, "The statute of limitations on child care expenses and the principle of laches preclude[] the court from

---

1. Following an order to show cause hearing in 2000 before a different commissioner, that commissioner recommended as follows:

> 2. From this point forward, if family members provide child care, [Father] does not need to pay. If [Mother's] neighbor provides the child care, [Mother] is to provide verification within 30 days and [Father] is to pay 1/2 the amount within 5 days. [Mother] to provide copies of checks to show verification of payment.
> 3. Parties stipulate to modify the decree of divorce with the language that verification of child care expenses is to be provided.

Neither party objected to this recommendation. *See generally* Utah R. Civ. P. 108(a) (explaining that a commissioner's recommendation "is the order of the court until modified by the court" and outlining the procedure for objecting to the recommendation). The parties disagree as to whether the commissioner's explicit reference to Mother's neighbor indicates that the modified verification requirements were intended to apply only to daycare expenses associated with the neighbor or whether they can be interpreted to apply to all daycare expenses. We need not resolve this dispute for purposes of our analysis, but it may be relevant to the district court's determination on remand.

considering child care expenses more than 8 years old." The recommendation therefore ordered that Father "pay one half of any pre-school or extended care expenses incurred between April 1, 2005 and June of 2006." The calculation ultimately adopted by the commissioner excluded Mother's claims for reimbursement relating to full-day kindergarten at Challenger and included only preschool expenses for the youngest child incurred before she entered kindergarten in September 2005.

¶4     Mother objected to the commissioner's recommendation, and a hearing was held before the district court on June 20, 2013. Following the hearing, the district court issued a minute entry stating only, "[T]he decision of the Commissioner is correct." Mother appeals.

ISSUES AND STANDARDS OF REVIEW

¶5     Mother first argues that the district court erred in adopting the commissioner's employment of an eight-year statute of limitations to bar her claims for reimbursement. "The trial court's application of a statute of limitations presents a question of law which we review for correctness." *Estes v. Tibbs*, 1999 UT 52, ¶ 4, 979 P.2d 823.

¶6     Mother next asserts that the district court erred in adopting the commissioner's determination that the doctrine of laches applies to this case. "[T]he question of laches presents a mixed question of law and fact." *Johnson v. Johnson*, 2014 UT 21, ¶ 8, 330 P.3d 704. Although "we typically grant some level of deference to the trial court's application of law to the facts," *Wayment v. Howard*, 2006 UT 56, ¶ 9, 144 P.3d 1147, the court's determination must be supported by adequate factual findings, *Anderson v. Thompson*, 2008 UT App 3, ¶ 42, 176 P.3d 464.

¶7     Finally, Mother argues that the district court's approval of the commissioner's reimbursement calculation erroneously excluded full-day kindergarten expenses that should have been

reimbursed as work-related daycare expenses under the statute. "The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusion." *Gutierrez v. Medley*, 972 P.2d 913, 914–15 (Utah 1998).

ANALYSIS

I. Statute of Limitations

¶8     Mother asserts that we should employ the statute of limitations applicable to child support orders and sum-certain judgments for past-due support. That statute of limitations permits enforcement within the longer of four years after the youngest child reaches majority or eight years from the date of entry of a sum-certain judgment. Utah Code Ann. § 78B-5-202(6) (LexisNexis 2012). Father argues that we should employ the general eight-year statute of limitations for judgments. *See id.* § 78B-5-202(1). When two statutes of limitations conflict, the statute applying to a specific type of action controls over a more general statute of limitations. *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 216 (Utah 1984). Thus, the resolution of this dispute turns on the question of whether daycare expenses constitute child support.

¶9     The Utah Code is ambiguous as to whether daycare costs that have not been reduced to a judgment fall within the definition of child support. First, the Utah Code mandates that a requirement "that each parent share equally the reasonable work-related child care expenses of the parents" be included in "[t]*he child support order*." Utah Code Ann. § 78B-12-214(1) (LexisNexis 2012) (emphasis added). A child support order is defined as an order that "establishes or modifies child support" or "reduces child support arrearages to judgment." *Id.* § 78B-12-102(9)(a)–(b).

¶10     Child support is defined as

[1] a base child support award, or [2] a monthly financial award for uninsured medical expenses, ordered by a tribunal for the support of a child, including [3] current periodic payments, [4] all arrearages which accrue under an order for current periodic payments, and [5] sum certain judgments awarded for arrearages, medical expenses, and child care costs.

*Id.* § 78B-12-102(8). "Base child support award" is defined as "the award that may be ordered and is calculated using the [child support] guidelines"[2] and explicitly excludes "medical expenses and work-related child care costs." *Id.* § 78B-12-102(4). The other types of support identified in the definition contemplate only fixed amounts—monthly financial awards, current periodic payments, arrearages, and sum-certain judgments. Mother urges us to interpret "current periodic payments" as encompassing the type of variable "reasonable monthly day care expenses actually paid" provided for in the parties' divorce decree. However, variable daycare expenses cannot be classified as "periodic" because they are based on actual expenses incurred, which may vary from week to week and month to month. Similarly, the phrase "arrearages which accrue under an order for current periodic payments" contemplates the existence of an order defining a specific amount to be paid periodically.

¶11    Thus, although the Utah Code requires courts to order the payment of work-related daycare expenses as part of the child support order, it appears to exclude such expenses (at least until they are reduced to judgment) from the definition of child support. We resolve this inconsistency by looking at the child support statute as a whole and by considering the intent and purpose of the

---

2. The child support guidelines are contained in sections 78B-12-201 to -219 of the Utah Code. Utah Code Ann. § 78B-12-102(12) (LexisNexis 2012). *See generally id.* §§ 78B-12-201 to -219 (2012 & Supp. 2013).

legislature in enacting the definition. *See Carter v. University of Utah Med. Ctr.*, 2006 UT 78, ¶¶ 9, 13, 150 P.3d 467 (explaining that "we seek to render all parts [of the statute] relevant and meaningful, and we accordingly avoid interpretations that will render portions of a statute superfluous or inoperative," and that "[w]e read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters" (alterations in original) (citations and internal quotation marks omitted)).

¶12    Until 2000, the child support statute's definition of child support merely stated, "'Child support' is defined in Section 62A-11-401." *See* Utah Code Ann. § 78-45-2(7) (Lexis Supp. 1999); *see also* Act of March 13, 2000, ch. 161, § 22, 2000 Utah Laws 558, 570. Section 62A-11-401 is contained in the statute relating to income withholding by the Office of Recovery Services (ORS) and provides definitions relevant to that statute. *See* Utah Code Ann. § 62A-11-401 (LexisNexis 2011). ORS's role in collecting child support is limited to specific dollar amounts contained in a support order and judgments for arrearages; ORS does not collect ongoing medical and daycare expenses where the dollar amount of those expenses is not specified in the divorce decree or reduced to a judgment. Utah Department of Human Services, Office of Recovery Services/Child Support Services, *Notice of Services*, 2 (July 1, 2014), *available at* http://www.ors.utah.gov/documents/ANIAForm.pdf. Thus, it stands to reason that the definition of child support contained in the ORS statute includes only forms of support that have a fixed dollar amount; we can conceive of no such rationale for excluding variable support, i.e., support defined by category rather than by dollar amount, from the child support statute's definition.

¶13    Although the legislature added an explicit definition of child support to the child support statute in 2000, that definition still relied on the language used in the ORS statute rather than creating

a distinct definition for purposes of the child support statute.[3] *Compare* Act of March 13, 2000, ch. 161, § 14, 2000 Utah Laws 558, 566, *with id.* ch. 161, § 22, 2000 Utah Laws 558, 570. Because the legislature simply adopted an already-existing definition, it does not appear to have made a conscious decision to exclude variable medical and daycare expenses from the definition of child support in the context of the child support statute, and indeed, its requirement that reimbursement for daycare expenses be provided for in *the child support order* suggests the opposite. *See* Utah Code Ann. § 78B-12-214(1).

¶14    The exclusion of medical and daycare expenses from the definition of base child support also does not appear to stem from the legislature's determination that these expenses do not constitute child support, but from its desire to distinguish these two categories from other categories of child-rearing expenses presumably covered by the base child support award. *See Davis v. Davis*, 2011 UT App 311, ¶ 17, 263 P.3d 520 ("[C]hild-rearing expenses not statutorily distinguished from regular child support should be considered part and parcel of the child support award." (citation and internal quotation marks omitted)). Indeed, the fact that the legislature felt the need to distinguish "base child support" from "child support" on this basis suggests that it expected medical and daycare expenses to fall within the general definition of child support and that a different term was needed to refer to the base award "calculated using the [child support] guidelines." *See* Utah Code Ann. § 78B-12-102(4) (LexisNexis 2012); *see also Wardle v. Bowen*, 2005 UT App 226U, para. 11 ("[T]here is no question that . . . medical and daycare expenses are in the nature of child support."); *Black's Law Dictionary* 274 (9th ed. 2009) (defining child support as,

---

3. The only current difference between the two definitions is that the ORS definition "includes obligations ordered by a tribunal for the support of a spouse or former spouse with whom the child resides if the spousal support is collected with the child support." *Compare* Utah Code Ann. § 62A-11-401 (LexisNexis 2011), *with id.* § 78B-12-102(8) (2012).

inter alia, "the money legally owed by one parent to the other for the expenses incurred for children of the marriage").

¶15   In short, we conclude that variable daycare expenses constitute child support and that the statute of limitations governing enforcement of child support orders applies to Mother's claim for reimbursement. Because the statute of limitations permits enforcement of the divorce decree's order on daycare expenses at least until four years after the youngest child reaches majority, it does not preclude Mother from seeking reimbursement for the pre-2005 daycare expenses. *See* Utah Code Ann. § 78B-5-202(6) (LexisNexis 2012).

## II. Laches

¶16   The commissioner alternatively determined that the principle of laches barred Mother from recovering expenses incurred prior to April 2005. "To successfully assert a laches defense, a defendant must establish both that the plaintiff unreasonably delayed in bringing an action and that the defendant was prejudiced by that delay." *Borland v. Chandler*, 733 P.2d 144, 147 (Utah 1987). "The length of time that constitutes a lack of diligence depend[s] on the circumstances of each case, because the propriety of refusing a claim is equally predicated upon the gravity of the prejudice suffered . . . and the length of delay." *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Lindberg*, 2010 UT 51, ¶ 28, 238 P.3d 1054 (alteration and omission in original) (citation and internal quotation marks omitted). This issue is therefore highly fact-dependent, requiring consideration of "the relative harm caused by the petitioner's delay, the relative harm to the petitioner, and whether or not the respondent acted in good faith." *Id.*

¶17   The commissioner's recommendation contains no findings supporting a determination that laches applies in this case. It merely states that both the statute of limitations *and* the principle of laches preclude the court from considering daycare expenses more than eight years old. First, this determination is erroneous

inasmuch as it suggests that the passage of a particular length of time was alone sufficient to invoke the doctrine of laches. *See id.* Second, the findings made by the commissioner at the hearing do not address the two elements of a laches defense.[4] The commissioner did not explicitly find that Mother unreasonably delayed in bringing her action. Instead, the commissioner was equivocal on this point, merely observing that the parties disputed this issue and that "[i]t *appears* that [Mother] has not provided proof of these expenses until recently." (Emphasis added.) The commissioner made no findings regarding the prejudicial impact of any delay on Father. *See id.*; *Borland*, 733 P.2d at 147. Without specific findings supporting a determination that laches applied in this case, the commissioner's recommendation—and, accordingly, the district court's adoption of that recommendation[5]—was erroneous.

---

4. In fact, although the order adopted by the commissioner asserted laches as a justification for her ruling, her oral ruling did not appear to rely on laches. The commissioner focused primarily on the statute of limitations and asserted only that "there's a principle of laches that indicates that, if a party simply does not provide proof for a significant period of time and, simply, does not make any requests whatsoever with regard to those expenses, that they can waive that merely by the passage of time." Although the commissioner discussed laches, she did not explicitly determine that it applied in this case until she approved the written order.

5. Although we conclude that the district court's findings were ultimately inadequate to support its determination that laches applied, our determination is based on the inadequacy of the commissioner's findings, not the fact that the district court summarily adopted those findings as its own. Contrary to Mother's assertion, it is not erroneous for a district court to adopt a commissioner's findings rather than making its own separate findings where its decision and reasoning do not differ from that of the commissioner. Where the district court does so, we will simply evaluate the commissioner's findings as though they were made by the district court.

¶18 The absence of more specific findings is perhaps understandable in light of the fact that the commissioner relied primarily on the statute of limitations in denying Mother's claim for reimbursement of pre-2005 expenses. *See supra* note 4. However, given our reversal of that determination, additional findings are necessary to determine which of Mother's expenses may be properly reimbursed. If supported by adequate findings, a determination that some portion of Mother's claims are barred by laches would not necessarily be inappropriate.[6] Alternatively, based on adequate findings, the district court may exercise its discretion to deny Mother's claims if it determines that she failed to comply with Utah Code section 78B-12-214(2)(b), which outlines the verification requirements a parent must comply with to obtain reimbursement for daycare expenses,[7] *see* Utah Code Ann. § 78B-12-214(2)–(3) (LexisNexis 2012), or with the requirements of the parties' divorce decree, *see supra* ¶ 2 & note 1. Or the district court may conclude that all of Mother's claims are reimbursable because they were brought within the statute of limitations. In any event, additional findings are needed to support the district court's determination.

---

6. Relying on Utah Code section 78B-12-109, Mother asserts that laches is inapplicable to claims for support made pursuant to a court order. However, this section precludes only waiver and estoppel defenses and says nothing about laches. *See* Utah Code Ann. § 78B-12-109 (LexisNexis 2012). While the doctrines of estoppel and laches may be similar, they are still distinct legal doctrines with different elements. *Compare CECO Corp. v. Concrete Specialists, Inc.*, 772 P.2d 967, 969–70 (Utah 1989) (outlining the elements of equitable estoppel), *with Papanikolas Bros. Enters. v. Sugarhouse Shopping Ctr. Assocs.*, 535 P.2d 1256, 1260 (Utah 1975) (outlining the elements of laches). We decline to read section 78B-12-109 more broadly than it is written.

7. The commissioner suggested as much at the hearing but did not base her ruling on that ground.

### III. Extended-Care Expenses

¶19    Finally, although Mother acknowledges that private-school tuition does not fall within the scope of reimbursable daycare expenses, she argues that she should be entitled to reimbursement for one-fourth of the cost of full-day kindergarten because the second half of the day constitutes "extended care expenses," for which the commissioner acknowledged Mother should receive reimbursement. The commissioner indicated that "extended care prior to or after the core time period is also a type of day care expense[]" and that the parties should "work together" to determine what portion of the claimed full-day kindergarten tuition, if any, constituted daycare expenses. Because the "core time period" for kindergarten is only half of the regular school day, Mother asserts that the other half should be categorized as daycare.[8]

¶20    Mother claims that she has always sought reimbursement for only one-fourth of the kindergarten expenses because the first half of the cost of full-day kindergarten is attributable to the regular kindergarten school day. However, when Mother submitted a proposed order to the commissioner, it contained the same calculation that the commissioner had acknowledged to be erroneous, which included the entire cost of the youngest child's full-day kindergarten tuition. Thus, when Father submitted an order that excluded the kindergarten expenses completely, the commissioner adopted that order. While Father is not responsible for the cost of regular half-day kindergarten tuition, any extra tuition paid for full-day kindergarten may qualify as extended-care

---

8. Mother does not demonstrate that the cost of an additional half day of kindergarten would be no more expensive than a half day of extended care or other daycare.

expenses.[9] On remand, the district court should take this into consideration in calculating the amount owed by Father.

CONCLUSION

¶21    The district court erred in adopting the commissioner's recommendation that Mother's pre-2005 reimbursement claims were barred by the statute of limitations and laches. The district court's adoption of the commissioner's calculation excluding extended-care costs associated with the youngest child's full-day kindergarten was likewise erroneous. Accordingly, we vacate the district court's order and remand for additional findings and conclusions, in accordance with this opinion, regarding Mother's claims for reimbursement.

———————

9. That said, we are not convinced that Mother's one-fourth calculation accurately represents Father's share of the daycare obligation. Father would not be required to pay any portion of the children's tuition for half-day kindergarten. Thus, his portion should be, at most, half of the difference between the cost of full-day kindergarten and the cost of half-day kindergarten, which may not be the same as one-fourth of the total cost of full-day kindergarten. And it may be that some further adjustment is necessary if full-day kindergarten is significantly more expensive than traditional daycare and Father did not at least tacitly agree to the use of full-day kindergarten as daycare.