2003 UT App 237

**Sandra WALKER and Floyd Walker, Plaintiffs and Appellant,**

v.

**Mary HANSEN, Jeffery Potkins, and RT Systems, Defendants and Appellees.**

No. 20010958–CA.

Court of Appeals of Utah.

July 10, 2003.

Daniel F. Bertch and Kevin K. Robson, Bertch Robson, Salt Lake City, for Appellant.

Lynn S. Davies, Melinda A. Morgan, and Christian S. Collins, Richards Brandt Miller & Nelson, Salt Lake City, for Appellee Mary Hansen.

Barbara K. Berrett, Berrett & Associates, LC, Salt Lake City, for Appellees Jeffery Potkins and R.T. Systems.

Before Judges BILLINGS, BENCH, and THORNE.

## OPINION

THORNE, Judge:

¶ 1 Sandra Walker appeals a jury verdict.[1] We affirm.

## BACKGROUND [2]

¶ 2 In 1997, Walker was a passenger in a car driven by Mary Hansen when that car collided with a truck on Interstate 215, in Salt Lake County, Utah. The driver of the truck, Jeffery Potkins, was clearly in the scope of his employment with RT Systems at the time of the collision. Walker filed suit

---

1. Floyd Walker was dismissed by stipulation of parties prior to trial.

2. "On appeal, we recite the facts from the record in the light most favorable to the jury's ver-

dict...." *Diversified Holdings, L.C. v. Turner,* 2002 UT 129, ¶ 2, 63 P.3d 686 (alterations in original) (quoting *State v. Daniels,* 2002 UT 2, ¶ 2, 40 P.3d 611).

against Hansen, Potkins, and RT Systems, claiming negligence. Hansen offered Walker $100,000 to settle the suit. Walker rejected the offer and the matter was set for trial.

¶ 3 Prior to trial, Walker filed a motion in limine seeking to prevent the defendants from "questioning [about] collateral source benefits that may have been paid to Ms. Walker for her injuries." Specifically, Walker sought to avoid introduction of evidence regarding payment of PIP, or no-fault insurance, benefits. The defendants agreed, but insisted that the special damage award should be reduced at the end of trial by the amounts paid. Walker stipulated to reduce the special damage award by the amount of no-fault insurance benefits and not to inform the jury that this would be done.

¶ 4 During voir dire, Hansen, Potkins, and Walker were each granted three peremptory challenges, for a total of nine.[3] At no time before or during voir dire did Walker object to the court's decision to grant each defendant three peremptory challenges.

¶ 5 Also prior to trial, Walker filed a motion in limine asking the court to restrict Dr. Marble, a designated expert, from testifying regarding the cause of Walker's injuries. The motion was granted, but at trial, over Walker's objection, Dr. Marble testified about the significance of Walker not complaining of low back pain in the emergency room immediately after the accident. He stated that "had ... this patient sustained two or three herniated discs as a result of an auto accident like this, I certainly would have expected her to be complaining of pain at this stage."

¶ 6 At trial, Dr. Sawchuck also testified for the defense. When Walker cross-examined Dr. Sawchuck, she attempted to introduce evidence that Dr. Sawchuck gave Walker a 15% impairment rating. The defense objected, arguing that such questioning exceeded the scope of direct. The trial court agreed and sustained the objection. At that time, Walker asked the court whether she could call Dr. Sawchuck as a witness. The court declined this request and stated that Walker had not designated Dr. Sawchuck as a wit-

ness. Walker disagreed and informed the judge that Dr. Sawchuck was on Walker's witness list. Soon thereafter, the court called a recess. When the trial resumed, Walker cross-examined Dr. Sawchuck on several matters, but never called Dr. Sawchuck as her own witness and never again questioned him regarding the impairment rating.

¶ 7 The matter was submitted to the jury. During deliberations, the jury asked a question of the court regarding pain and suffering damages. With the parties' assistance and agreement, the court drafted a response to the question and submitted it to the jury. Walker agreed on the record that the response was "all right" and initialed it.

¶ 8 The jury awarded Walker $25,000 in special damages and $5,000 in general damages. Walker filed a motion for new trial and, alternatively, additur, arguing jury misconduct, because no juror responded to voir dire questions with any indication that they were opposed to awarding pain and suffering damages. Thereafter, Hansen filed a motion seeking payment of $2,335.26 in post-offer costs.

¶ 9 The trial court, by way of judgment, reduced the special damage award by $10,000 to reflect payment to Walker of $10,000 in PIP or no-fault insurance benefits. In addition, because Hansen had offered to settle the matter for $100,000 prior to trial, an offer Walker refused, the court awarded Hansen $726.55 in post-offer costs. Walker appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 10 Walker argues that the trial court erred in awarding each defendant three peremptory challenges pursuant to Utah Rule of Civil Procedure 47(e). "To the extent this issue requires us to interpret rules of civil procedure, it 'presents a question of law which we review for correctness.'" *Harris v. IES Assocs., Inc.*, 2003 UT App 112, ¶ 25, 69 P.3d 297 (quoting *Nunley v. Westates Casing Servs., Inc.*, 1999 UT 100, ¶ 42, 989 P.2d 1077).

---

**3.** It is not clear from the record how many of these challenges were used. However, for the purposes of this opinion, we assume that all nine challenges were used.

¶ 11 Walker next argues that the trial court erred in not granting Walker's motion for a new trial because there was evidence of jury misconduct. "A district court has broad discretion in deciding whether to grant or deny a motion for a new trial." *Green v. Louder*, 2001 UT 62, ¶ 13, 29 P.3d 638 (citations omitted).

¶ 12 Walker also argues that the trial court erred in allowing Dr. Marble to exceed the scope of a pretrial ruling in limine and further that the trial court erroneously prevented Dr. Sawchuck from fully testifying. "With regard to the admissibility of expert testimony, '[t]he trial court has wide discretion . . . and such decisions are reviewed under an abuse of discretion standard.'" *State v. Maestas*, 2002 UT 123, ¶ 19, 63 P.3d 621 (Durham, C.J., dissenting) (alterations in original) (quoting *State v. Larsen*, 865 P.2d 1355, 1361 (Utah 1993)). "Under this standard, we will not reverse a decision to admit or exclude expert testimony unless the decision 'exceeds the limits of reasonability.'" *Id.* (Durham, C.J., dissenting) (quoting *State v. Hollen*, 2002 UT 35, ¶ 66, 44 P.3d 794).

¶ 13 Next, Walker claims that the trial court erred in reducing the judgment to reflect the payment of PIP or no-fault insurance. Whether the judgment should be reduced to reflect the payment of PIP or no-fault insurance is a mixed question of law and fact. We review the factual finding for clear error and the legal conclusions for correctness. *See generally State v. Pena*, 869 P.2d 932, 935–36 (Utah 1994).

¶ 14 Finally, Walker argues that the trial court erred in awarding taxable costs to the defendant. "A court's award of costs is also within its sound discretion which ruling we will not disturb absent an abuse of discretion." *Stevenett v. Wal–Mart Stores, Inc.*, 1999 UT App 80, ¶ 10, 977 P.2d 508.

4. During deliberations, the jury submitted the following question to the judge: "To the issue of pain and suffering if some are against the principal [sic] of it does that violate instruction No. 3 or any other instruction?" The judge, with approval of counsel, responded:

Despite your personal views, you are required to follow the instructions as given and are

## ANALYSIS

### I. Peremptory Challenges

¶ 15 Walker argues that it was plain error for the trial court to grant each defendant three peremptory challenges. "To demonstrate plain error, [Walker] must show an error occurred that should have been obvious to the trial court and that prejudiced the outcome of [her] trial." *State v. Litherland*, 2000 UT 76, ¶ 31, 12 P.3d 92.

¶ 16 Here, we conclude that Walker waived any objection she had regarding the peremptory challenges. The court informed the attorneys before starting voir dire that it intended to allow nine peremptory challenges—three for the plaintiff and six for the defense because of the adversary positions of Hansen and Potkins. Walker admits on appeal that she did not object to this decision even though the voir dire process was extensive and Walker had ample opportunity to raise an objection. Rather than object, Walker sat by idly and allowed voir dire to proceed, only to raise an objection on appeal. We conclude that Walker affirmatively waived this issue. *See State v. Harmon*, 956 P.2d 262, 269 (Utah 1998) (noting that when defense counsel approved a jury instruction as given, he waived "any objection on appeal"). Hence, any error in granting each defendant three peremptory challenges was not plain error.

### II. Jury Misconduct

¶ 17 Next, Walker alleges jury misconduct and cites the jury's question as proof that members of the jury opposed pain and suffering damages but did not say so during voir dire.[4] Generally, if a party fails to object to a jury instruction, that party waives any objection thereto. *See, e.g., Harmon*, 956 P.2d at 269. Walker voiced her objection when she learned of the jury's question:

referred in particular to instructions No. 2 and [No.] 34 in this regard. On the issue of pain and suffering[,] after giving consideration to the evidence, you may award as little or as much as you believe is appropriate consistent with instruction [No.] 38.

I'm just so afraid of—on what that means when it says that "some of us are against the principal [sic] of pain and suffering," and your Honor clearly addressed that in voir dire and no one gave any indication in the jury panel at that time that they were against that principal [sic]. Now all of a sudden a question comes up that seems to be addressing that some of them are against that principal [sic].

Based upon that I would make my objections. I do agree that as amended the Court's answer is something I think is fair, but I think it maybe needs another one that instructs (inaudible) that pain and suffering is a legitimate damage [sic], or something to that effect.

The court responded to some of Walker's concerns and created a response to reflect those concerns. Walker did not renew an objection to the response after the court modified it. Instead, Walker agreed to the amended response, both orally and in writing, by initialing the response. We conclude that Walker waived any objection she might have had to the jury response because she did not object to the modified response at trial. Consequently, Walker has not preserved this issue for appeal. *See id.* (noting that when defense counsel approved a jury instruction as given, he waived any objection on appeal).

### III. Expert Witnesses

¶ 18 Walker next argues that the court erred by preventing her from questioning Dr. Sawchuck regarding Walker's impairment rating. Walker cross-examined Dr. Sawchuck and attempted to question him regarding his conclusion that Walker had suffered a 15% impairment as a result of the accident. The defense objected to this question on the grounds that it exceeded the scope of direct examination. The trial court sustained the objection.[5] Walker then asked

to call Dr. Sawchuck as her own witness. The trial court rejected this request believing improperly that Walker had not designated Dr. Sawchuck as a witness. Walker informed the judge that she had, in fact, designated Dr. Sawchuck as a witness. The court then recessed to examine the question. Upon resuming trial, Walker did not attempt to call Dr. Sawchuck as a witness.[6] Accordingly, we conclude that Walker waived any objection she may have had regarding whether the trial court should have allowed her to call Dr. Sawchuck as a witness. *See Diversified Holdings, L.C. v. Turner,* 2002 UT 129,-¶ 8, 63 P.3d 686 (noting the " 'general rule that "issues not raised at trial cannot be argued for the first time on appeal" ' "(citations omitted)).

¶ 19 Furthermore, Utah Rule of Civil Procedure 61 provides that we may "disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Utah R. Civ. P. 61. Walker has not demonstrated that the trial court's actions relating to Dr. Sawchuck had any effect on her substantial rights or the outcome of the trial. Nor is it clear from the record that the trial court improperly limited Walker's examination of Dr. Sawchuck or whether Walker's trial counsel elected not to call this witness.

¶ 20 Walker also argues that Dr. Marble's testimony violated a pre-trial order because he testified beyond the scope of his report.[7] "With regard to the admissibility of expert testimony, '[t]he trial court has wide discretion ..., and such decisions are reviewed under an abuse of discretion standard.' " *State v. Maestas,* 2002 UT 123,¶ 19, 63 P.3d 621 (Durham, C.J., dissenting) (alterations in original)(quoting *State v. Larsen,* 865 P.2d 1355, 1361 (Utah 1993)). "Under this standard, we will not reverse a decision to admit or exclude expert testimony unless the decision 'exceeds the limits of reasonability.' "

---

5. Walker does not argue on appeal that the trial court erred in finding that the question exceeded the scope of direct examination.

6. Additionally, after reviewing the record, we conclude that it is not even clear that the court prevented Dr. Sawchuck from testifying. The trial court record does not reflect a specific rul-

ing on this issue and Walker did not ask the court to make such a ruling on the record.

7. The court found as follows: "As to the scope of Marble on causation, I think he can testify as to whatever he said in that report, but ... to go beyond that it seems to me could be equally unfair to the plaintiff."

*Id.* (quoting *State v. Hollen,* 2002 UT 35, ¶ 66, 44 P.3d 794).

¶ 21 Here, Dr. Marble's report included a summary of each of Walker's doctor visits and the reason for her visit. Dr. Marble testified that when Walker was first admitted to the hospital after the car accident she did not complain of low back pain. However, she later alleged that the accident caused her back injury. Over objection, Dr. Marble testified that "had … this patient sustained two or three herniated discs as a result of an auto accident like this, I certainly would have expected her to be complaining of pain at this stage." While this opinion was not, per se, in the report, it can be inferred from the text. Accordingly, we cannot say that the trial court's decision to allow Dr. Marble to testify regarding this issue exceeded the limits of reasonability.

### IV. No–Fault Insurance Payments

¶ 22 Walker next argues that the trial court erred in reducing the special damage award by the amount of PIP or no-fault insurance payments. The " 'general rule [is] that "issues not raised at trial cannot be argued for the first time on appeal." ' " *Diversified Holdings, L.C. v. Turner,* 2002 UT 129, ¶ 8, 63 P.3d 686 (citations omitted).

¶ 23 Prior to trial, Walker filed a motion in limine seeking to prevent introduction of evidence regarding benefits paid by collateral sources. Defense counsel stipulated to the motion but insisted that "at the end [of the trial] if there are special damages awarded on the special verdict form, that an offset be allowed for any benefits that have been paid." Walker questioned the court about whether the special verdict form would instruct the jury that the special damage award would be reduced by $10,000. The court informed Walker that the jury would neither be told about the $10,000 no-fault insurance payment nor would they be told that the payment would be subtracted from the award. The court stated: "The jury doesn't even hear about it, .... We just have an understanding, and when that matter is presented, if you get a judgment, the judgment would reflect the reduction of whatever benefits had been paid. That's the way it's

normally done on stipulation of Counsel." Walker then raised some concerns about this procedure and stated that "the code reflects that any subrogation rights, i.e.[,] PIP[,] are exclusively the providence of arbitration between the insurers." The court responded, "I understand, … and the way it's normally resolved is as I've indicated…. If that's something you're uncomfortable with, then we'll let the jury take a look at it." Walker then stipulated to having the judgment reduced by the amount of "whatever benefits had [already] been paid." Accordingly, we conclude that Walker waived any objection she may have had to reducing the special damage award by the amount of the no-fault payment. The court informed Walker that the judgment would be reduced by $10,000 if the jury found for Walker and awarded her damages. Walker did not renew her objection to this procedure and, thereby, waived any error that might exist.

### V. Taxable Costs

¶ 24 Lastly, Walker argues the trial court erroneously awarded Hansen taxable costs incurred prior to Hansen's offer of settlement. Prior to trial, Hansen offered Walker $100,000 to settle the matter pursuant to Utah Rules of Civil Procedure 68(b). Rule 68(b) provides:

> At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with cost then accrued…. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Utah R. of Civ. P. 68(b). In compliance with rule 68, Hansen requested $2,335.26 in post-offer costs and submitted an affidavit in support thereof. Walker alleges that the trial court erroneously awarded Hansen all of her taxable costs, including those incurred before the settlement offer. We disagree. After

reviewing the record, we conclude that the trial court only considered post-offer taxable costs as required by rule 68. Thus, we cannot say that the trial court exceeded the permitted range of discretion when he awarded Hansen $726.55 in costs.

## CONCLUSION

¶ 25 We conclude that Walker waived any objection to the trial court's decision to award the defense six peremptory challenges; that Walker waived any error related to the trial court's response to questions posed to it by the jury; that Walker waived any error regarding Dr. Sawchuck; that the trial court did not exceed its permitted range of discretion in allowing Dr. Marble's testimony; that Walker stipulated to reducing the judgment to reflect PIP or no fault insurance payments; and that the trial court did not exceed its permitted range of discretion in awarding post-offer costs.

¶ 26 Accordingly, we affirm.

¶ 27 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge, and RUSSELL W. BENCH, Judge.