2006 UT 56

**Glynn F. WAYMENT and Edward C. England, Plaintiffs and Appellees,**

v.

**Lee R. HOWARD and William Howard, Defendants and Appellant.**

**No. 20050547.**

Supreme Court of Utah.

Sept. 29, 2006.

John H. Mabey, Jr., David C. Wright, Salt Lake City, for appellees.

J. Craig Smith, D. Scott Crook, Scott M. Ellsworth, Salt Lake City, for appellant.

WILKINS, Associate Chief Justice:

¶ 1 Appellant Lee R. Howard seeks review of the trial court's decision finding for Appellees Glynn F. Wayment and Edward C. England on their claim of interference with water right number 35–8073 and against Howard's counterclaims of trespass, negligence, and nuisance. We affirm on all issues.

## BACKGROUND

¶ 2 Appellee Wayment owns real property bordered on the south by Appellee England. England's property is bordered on the south by Appellant Howard's property. A slough, traditionally known as the "Marriot Slough," traverses the Appellees' and the Appellant's property. Appellees are successors in title to water right number 35–8073. This right was originally obtained by Mary Marriot in 1916 and provided for a flow rate of 0.5 cubic feet per second (cfs) of water to be used as irrigation water.

¶ 3 The trial court found that Appellees (as well as their predecessors) have accessed this water by damming the northern end of the slough, allowing the slough to fill, and then pumping water out of the slough to irrigate. The dam remains in place throughout the irrigation period so that any water arriving on the Appellees' property remains there until (1) it is used by the Appellees, (2) it is drained at the end of the irrigation period, or (3) if the water level in the slough is too high, it runs down a tin beneath 5900 West and reenters the slough on the Appellant's property.

¶ 4 This process was described by Marriot in her original Application to Appropriate Water (submitted to the Utah State Water Engineer ("State Engineer")), the Proof of Appropriation of Water (completed by the State Engineer's office), as well as an explanatory letter from Marriot to the State Engineer. Marriot originally applied for a flow of 1 cfs but stated in her application that "it is not probable that a continuous flow of one [cfs] can be obtained, but it is the intention of the appropriator to pump as much as possible at a time and then resting [sic] untill [sic] the slough fills again." It takes at least one day to pump the water out of the slough and at least two more days for the slough to refill. Because of this process, the flow is inconsistent; the flow decreases as the slough fills. The State Engineer's office measured an average flow of 0.53 cfs and, as a result, authorized the appropriation at 0.5 cfs. No flow measurements have been taken other than those by the State Engineer while

considering approval of Marriot's 1914 application.

¶ 5 Appellant does not own a water right, but rather owns shares in an irrigation company, known as the Knight Irrigation Company, and irrigates using the water from a diversion point south of the separation tin. Appellant constructed a dike across the slough in 1998, without State Engineer approval. Later, Appellant consulted the Army Corps of Engineers, which granted a permit for the dike and instructed Appellant to place two pipes into the dike. Appellant complied by installing one pipe 36 inches in diameter and one 15 inches in diameter. Two witnesses at trial testified that Appellant intended to impound water with the dike. Accordingly, Appellees claim (and the trial court found) that the dike impedes the flow through the slough, requiring a significant build-up of water in the slough before water will flow through the dike and into the slough on Appellees' property.

¶ 6 In 2000, Appellees paid to have the slough on their property dredged so that water would flow more freely. Though temporarily stopped, dredging was completed after the Army Corp of Engineers approved the process. Appellant did not allow any dredging on his property.

¶ 7 Appellees brought suit in 2001, claiming interference with their water right. The action included claims and counterclaims of trespass, nuisance, and negligence. Following two motions by Appellant for summary judgment, which the trial court denied, the case was tried in November 2003. The trial court decided the case in favor of Appellees, finding interference with Appellees' water right, and ordered Appellant's dike modified to allow unrestricted flow. The court also permanently enjoined Appellant from further interference. After several overruled objections, the court entered final judgment in May 2005. Appellant now appeals.

**ANALYSIS**

¶ 8 The two questions presented to us on appeal are (1) whether the evidence at trial supports the trial court's final judgment findings and (2) whether summary judgment was properly denied. Additionally, several subsidiary issues are raised, including whether Appellees can supplement additional water to their appropriated water right, whether the trial court correctly found that the flow of the Marriott Slough is "generally south to north," and whether Appellees are limited by their water right to a duty of only three acre-feet. Because we conclude that the trial court's findings of interference were adequately supported by the evidence, we need not, and therefore do not, reach the subsidiary issues raised by Appellant. These subsidiary issues do not alter our conclusion with respect to the trial court's action. We therefore address only the two central issues, namely, the trial court's (1) final judgment findings and (2) denial of summary judgment.

## I. REVIEW OF THE EVIDENTIARY SUPPORT FOR THE TRIAL COURT'S FINDINGS

¶ 9 Appellant first contends that the trial court's final judgment finding interference is unsupported by the evidence. A determination of interference, much like one of impairment, is best viewed as a mixed question of fact and law. The trial court must first find facts regarding the claim of interference and then determine whether those facts are within the ambit of interference as applied to the water right at issue.[1] When reviewing a mixed question of fact and law, we typically grant some level of deference to the trial court's application of law to the facts.[2] In this instance, because the issue of interference is extremely fact dependent, we grant broad deference to the trial court.[3] In addition, when appealing a highly fact dependent issue, the appellant has a

---

1. *See Searle v. Milburn Irrigation Co.*, 2006 UT 16, ¶ 15, 133 P.3d 382 (issue of impairment is a mixed question of fact and law).

2. *See id.* ¶ 16 (citing *State v. Pena*, 869 P.2d 932 (Utah 1994)).

3. *See Pena*, 869 P.2d at 937 (recognizing that questions applying law to fact are given varying degrees of deference).

duty to marshal the evidence.[4] This duty requires an appellant to marshal all of the facts used to support the trial court's finding and then show that these facts cannot possibly support the conclusion reached by the trial court, even when viewed in the light most favorable to the appellee.[5] An appellant may not simply cite to the evidence which supports his or her position and hope to prevail.[6] Furthermore, failing to properly marshal is sufficient ground for affirming the trial court's finding.[7] We will review the trial court's findings and Appellant's marshaled evidence.

## A. The Pumping and Refilling Cycle

■ ¶ 10 Appellant argues that the only evidence of interference is in relation to the flow, rather than the amount, of Appellees' water right. Further, Appellant contends that because Appellees were receiving more than the 0.5 cfs specified in their certificate, unless the flow, which affects Appellees' method of appropriation, is a protected part of the water right, no interference has occurred. Therefore, Appellant challenges the trial court's finding of fact regarding Appellees' method of appropriation.

¶ 11 The trial court found that Appellees use a diversion dam on the north end of the slough to allow the slough to fill so that water can then be pumped to Appellee's crops. After pumping, the slough refills and the process repeats, until the end of the irrigating season when the slough is allowed to empty. The trial court found that this "pumping and refilling cycle" is the "means or method" by which water right number 35–8073 is and has historically been used and that, without it, the water right cannot be used.

¶ 12 The evidence to support this finding includes a description of the cycle in the Application to Appropriate, the original appropriator's explanation of the process in a letter to the State Engineer when the right was originally approved, the testimony of Appellee Wayment and Appellee England, and the remarks from the State Engineer's office on the Proof of Appropriation. This evidence presented to the trial court, if accepted, is sufficient to support the challenged finding. Further, Appellant has failed in meeting his obligation to demonstrate that, as a matter of law, the evidence is insufficient. As a result, we accept the finding regarding the pumping and refilling cycle.

## B. The Finding of Interference

■ ¶ 13 Appellant also challenges the trial court's finding of interference. Interference means to obstruct or hinder.[8] Specifically, in our water law, obstructing or hindering the quantity or quality of an existing water right constitutes interference.[9] Our case law also protects an appropriator's right to continue use of his existing and historical method of diverting the water.[10] The trial court found that Appellant's dike resulted in hindrance and obstruction of Appellees' flow of water, resulting in interfer-

---

4. See Chen v. Stewart, 2004 UT 82, ¶ 76, 100 P.3d 1177 (requiring appellant to marshal the evidence when the legal standard is extremely fact sensitive).

5. Utah R.App. P. 24(a)(9); see Jensen v. Sawyers, 2005 UT 81, ¶ 85, 130 P.3d 325 (marshaling obligation requires defendant to "ferret out a fatal flaw in the evidence" and become a "devil's advocate") (citing State v. Green, 2005 UT 9, ¶ 28, 108 P.3d 710); Michael J. Wilkins et al., A "Primer" in Utah State Appellate Practice, 2000 Utah L.Rev. 111, 127.

6. See Chen, 2004 UT 82, ¶ 78, 100 P.3d 1177 (stating that to meet the marshaling requirement, "[a]ppellants cannot merely present carefully selected facts and excerpts from the record in support of their position.").

7. Id. ¶ 80.

8. See Black's Law Dictionary 831–32 (8th ed.2004).

9. See Adams v. Portage Irrigation Reservoir & Power Co., 95 Utah 1, 72 P.2d 648, 653 (1937) (holding that water from the source to the appropriator's point of diversion may be used by anyone, unless such use diminishes the quantity or impairs the quality for the appropriator).

10. See Salt Lake City v. Gardner, 39 Utah 30, 114 P. 147, 152 (1911)(holding that the original appropriator of a water right also acquires the right to continue use of his method or means of diversion).

ence.[11]

¶ 14 Again, in order for Appellant to successfully challenge the finding of interference, he must have marshaled all of the evidence supporting the finding, and then demonstrate that it could not support the findings of the trial court. In this instance, Appellant has failed to marshal any of the supporting evidence. Appellant instead merely presents and reargues the opposing evidence presented by him at trial regarding the quantity of water to which Appellees are entitled. Yet, as Appellees note, there was ample evidence to support a finding of interference including testimony from two witnesses regarding both the Appellant's intent to impound water when building the dike, the effects of the dike, pictures of the water level on each side of the dike, and the trial judge's personal observations of the site. The trial court found interference, and we are unpersuaded that the finding was erroneous.

### C. Dismissal of Appellant's Counterclaims

¶ 15 At trial, Appellant asserted counterclaims of trespass, negligence, and nuisance, claiming that Appellees' use of a tin to dam the slough before pumping water to their crops caused the water to flow onto Appellant's land. The trial court subsequently dismissed all three counterclaims. Appellant challenges those dismissals.

¶ 16 Appellant challenges the trial court's statement that Appellant had formally withdrawn his trespass counterclaim and asserts that his trespass claim is still unresolved. The record does support Appellant's assertion that the trespass claim was not withdrawn. However, it was litigated at trial, and dismissed on the merits. The record supports dismissal of the trespass claim.

11. Appellees assert that any degree of interference is prohibited. They base the argument on our rejection of the "de minimus" theory in claims of impairment. Under this theory, an application to either appropriate or change the point of diversion or use of water is to be approved if impairment is minimal. We have not adopted the de minimus standard, but rather have stated that no impairment is acceptable. *See Piute Reservoir & Irrigation Co. v. W. Panguitch Irrigation & Reservoir Co.*, 13 Utah 2d 6,

¶ 17 The trial court also dismissed Appellant's claims of negligence and nuisance for no cause of action. The trial court found that both the dike and Appellant's failure to dredge his property forced Appellees to hold water in the slough at a higher level. Holding the water at a higher level caused water to pool or meander into areas on Appellant's property where he claimed it had not historically gone. The trial court found that any damage to Appellant's property was the result of Appellant's own actions (or failure to act). Further, the trial court found that Appellees' use of the tin to dam the slough is a protected part of their historic method of utilizing their water right. In challenging these findings, Appellant failed to marshal any of the supporting evidence. We therefore must presume that the evidence presented was sufficient to support the trial court's findings,[12] and that Appellees neither created a nuisance, trespassed, nor were negligent in the use of their water right.

### II. APPELLANT'S CLAIM OF TRIAL COURT ERROR IN DENYING MOTIONS FOR SUMMARY JUDGMENT

¶ 18 Appellant also asks us to examine whether the trial court properly denied Appellant's motions for partial summary judgment made during the proceedings.

¶ 19 Appellant made two motions for partial summary judgment, both of which were denied prior to trial. At trial, Appellant had the opportunity to fully litigate the issues raised in the summary judgment motions. He was allowed to present his evidence and argument on the issues. Thereafter, the trial court ruled against him on the merits.

¶ 20 In appealing a summary judgment ruling, only facts and legal theories that were *foreclosed* from being addressed at

367 P.2d 855, 858 (1962). While this may be true for impairment, we need not and do not reach the issue of whether we apply a de minimus standard to interference.

12. *See State v. Green*, 2005 UT 9, ¶ 13, 108 P.3d 710 (holding that when an appellant fails to adequately marshal, the appellate court is bound to assume the record supports the trial court's factual findings).

trial may be heard on appeal. Even if the motions had been granted, the interlocutory nature of a partial summary judgment leaves them subject to modification by the trial court up until entry of final judgment.[13] Appellant was accorded the opportunity to fully litigate his case. Consequently, the trial court's initial denials of partial summary judgment resulted in no prejudice, did not affect the final outcome, and are not reviewable.

## CONCLUSION

¶ 21 Appellant has failed to demonstrate error in the trial court's factual findings and application of the law. Additionally, Appellant's counterclaims were properly dismissed on their merits. Further, the evidence presented in support of Appellees' method of appropriation was sufficient to support the findings and conclusions reached by the trial court. Finally, the denial of Appellant's motion for partial summary judgment is unreviewable because the claims were fully litigated at trial. Affirmed.

¶ 22 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.

**13.** *See Denison v. Crown Toyota Motors, Inc.,* 571 P.2d 1359, 1360 (Utah 1977) (dismissing an appeal from denial of summary judgment motion because it was not from a final order); *see also Christensen v. Farmers Ins. Exch.,* 21 Utah 2d 194, 443 P.2d 385, 389 (1968) (explaining that ordinarily the denial of a motion for summary judgment is not appealable because it is not a final judgment).