2007 UT App 382

Emily NORMANDEAU, individually and as guardian for Alex Thayn, Jacob Thayn, and Hannah Normandeau, minors; and Lori Normandeau, as guardian for Daniel Normandeau and Melissa Normandeau, minors, on behalf of and for the benefit of the heirs of Dennis Normandeau, deceased, Plaintiffs and Appellees,

v.

HANSON EQUIPMENT, INC., Defendant and Appellant.

No. 20060723–CA.

Court of Appeals of Utah.

Nov. 29, 2007.

Melinda A. Morgan and Zachary E. Peterson, Salt Lake City, for Appellant.

Colin P. King, Paul M. Simmons, and Tawni J. Sherman, Salt Lake City, for Appellees.

Before Judges BILLINGS, DAVIS, and ORME.

## OPINION

BILLINGS, Judge:

¶ 1 Defendant Hanson Equipment, Inc. (Hanson) appeals the jury verdict in favor of Plaintiffs Emily Normandeau, individually and as guardian for Alex Thayn, Jacob Thayn, and Hannah Normandeau, minors;

and Lori Normandeau, as guardian for Daniel Normandeau and Melissa Normandeau, minors, on behalf of and for the benefit of the heirs of Dennis Normandeau (Plaintiffs). We affirm.

## BACKGROUND

¶ 2 In early 2001, Dennis Normandeau started working as a mechanic for Kenworth Sales Company, a diesel maintenance and repair shop and towing service. In May or June 2001, Normandeau's duties were increased to include working as the primary wrecking driver. Normandeau's supervisor at Kenworth trained Normandeau for his new responsibility and taught him how to use a large diesel wrecker.

¶ 3 On November 10, 2001, Normandeau responded to a call for roadside assistance after a Ryder rental truck broke down in Spanish Fork Canyon, Utah County, Utah. The truck had a spring-applied, hydraulically-released parking brake system. The parking or emergency brake was on the driveline behind the transmission and ran off the power steering unit. The truck broke down because it had a leak in the power steering line, which caused the parking brake to engage, preventing the driveline from turning and causing torque to build up in the driveline.

¶ 4 To tow the truck, Normandeau had to disconnect the driveline from the transmission. As Normandeau was disconnecting the driveline, the built-up torque released violently, causing the differential yoke to break off. Either the differential yoke or the driveshaft hit Normandeau in the head, killing him instantly.

¶ 5 Plaintiffs brought a wrongful death action, alleging that Hanson had earlier repaired the truck negligently, which caused it to break down. Plaintiffs' lawsuit also included International Truck & Engine Corporation (ITEC), which was the designer of the truck's hydraulic system, as well as other companies associated with the design, manufacture, and lease of the truck. All of the defendants except Hanson were dismissed before trial.

¶ 6 Prior to trial, Hanson filed a motion for summary judgment on the grounds that Hanson owed no duty of care to Normandeau, that Hanson's repair was not the proximate cause of Normandeau's death, and that Normandeau was negligent in preparing the truck for towing. The trial court denied Hanson's motion for summary judgment, and the case went to trial. The jury returned a verdict in favor of Plaintiffs. Hanson then filed a motion for a new trial or, in the alternative, for a remittitur. The trial court denied that motion, and Hanson now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 On appeal, Hanson first asserts that the trial court erred when it denied Hanson's motion for summary judgment. Because the issues presented to the trial court for summary judgment were also presented to the jury at trial, we do not consider this argument on the merits.

¶ 8 Second, Hanson claims that the trial court erred when it failed to instruct the jury regarding ITEC's negligent design of the truck's hydraulic system, which caused the parking brake to engage and resulted in the presence of torque in the driveline. "We review challenges to jury instructions under a correctness standard." *Child v. Gonda*, 972 P.2d 425, 429 (Utah 1998).

¶ 9 Third, Hanson asserts that the trial court abused its discretion when it failed to strike Normandeau's untimely designation of an expert witness who highlighted material issues of fact in opposing Hanson's motion for summary judgment. Hanson further argues that this error was compounded when the trial court granted Plaintiffs' motion in limine to preclude Normandeau's supervisor and co-worker from testifying at trial. "Trial courts have broad discretion in managing the cases before them...." *A.K. & R. Whipple Plumbing & Heating v. Aspen Constr.*, 1999 UT App 87, ¶ 11, 977 P.2d 518. Therefore, we review whether a trial court properly ruled on pretrial compliance with a scheduling order under an abuse of discretion standard. *See id.* We also review the trial court's grant of Plaintiffs' motion in limine under an abuse of discretion standard. *See*

*Walker v. Hansen*, 2003 UT App 237, ¶ 12, 74 P.3d 635.

¶ 10 Fourth, Hanson argues that Normandeau's counsel made improper closing arguments at trial and that these improper arguments warrant a new trial. "[T]he grant of a new trial is ordinarily left to the sound discretion of the trial court[; therefore,] we ... review the court's decision in this regard under an abuse of discretion standard." *Child*, 972 P.2d at 429.

## ANALYSIS

### I. Summary Judgment

¶ 11 Hanson first argues that the trial court erred when it denied Hanson's motion for summary judgment. However, before we reach the merits of this argument, we must decide, as a threshold matter, whether we should entertain an appeal of the trial court's denial of summary judgment after the case was subsequently resolved by a trial on the merits.

¶ 12 Generally, "[a] denial of a motion for summary judgment is not a final determination on the merits and, therefore, is not an appealable interlocutory order." *Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1247 (Colo.1996); *see also Heuser v. Schmittroth*, 2002 UT App 42U, 2002 WL 257563 (mem.) (per curiam) ("The denial of a summary judgment motion is not final and appealable because it leaves the case pending. Upon denial of [a] summary judgment motion, [the losing party] ha[s] the burden to either try the case or dismiss it."); *Manuel v. Fort Collins Newspapers, Inc.*, 631 P.2d 1114, 1116 (Colo.1981) (noting that in "most ... jurisdictions[,] the denial of a motion for summary judgment is not a final order which may be appealed but is, rather, an unappealable interlocutory ruling"). Some jurisdictions, including Utah, will allow a denial of a motion for summary judgment to be appealed, but only after the final judgment is entered in the case. *See Manuel*, 631 P.2d at 1116; *see, e.g., Malibu Inv. Co. v. Sparks*, 2000 UT 30, 996 P.2d 1043 (reviewing the trial court's denial of a motion for summary judgment). However, "[i]n a substantial number of jurisdictions, ... reviewability is

denied even after final judgment, particularly where the case has gone to trial subsequent to the denial of the summary judgment motion." *Manuel*, 631 P.2d at 1116.[1] A few jurisdictions provide an exception to this principle and will allow appellate review of a denial of summary judgment even after a trial on the merits, but only if the motion for summary judgment was based on a purely legal question.[2]

¶ 13 Utah case law suggests that we will entertain an appeal of a denial of a motion for summary judgment only if it involves a legal issue. In *Estate Landscape & Snow Removal Specialists, Inc. v. Mountain States Telephone & Telegraph Co.*, 844 P.2d 322 (Utah 1992), the Utah Supreme Court reviewed a denial of summary judgment after a trial on the merits because the trial court "was dealing with undisputed facts, [and its] denial of summary judgment amounted to a ruling of law." *Id.* at 326. But in *Wayment v. Howard*, 2006 UT 56, 144 P.3d 1147, the Utah Supreme Court declined to review a denial of partial motions for summary judgment because "[a]t trial, [the moving party] had the opportunity to fully litigate the issues raised in the summary judgment motions." *Id.* ¶ 19. Specifically, the moving party "was allowed to present his evidence and argument on the issues." *Id.* The su-

preme court reasoned that "[i]n appealing a summary judgment ruling, only facts and legal theories that were *foreclosed* from being addressed at trial may be heard on appeal." *Id.* ¶ 20. Thus, our case law suggests that only the legal issues decided by the denial of summary judgment that prevented a party from dealing with the issue at trial will be considered after a trial on the merits.

¶ 14 We conclude that the denial of the motion for summary judgment is not appealable under prior Utah case law and the facts of this case. The issue of proximate cause and negligence were presented to the jury and decided against Hanson. Certainly, the trial court did not err in declining to rule as a matter of law that Hanson's negligence was not a proximate cause of Normandeau's death. The issue of duty, though technically an issue of law, is heavily fact-sensitive and is intertwined with the issue of foreseeability, which was also presented to the jury and decided against Hanson. Indeed, Hanson "was accorded the opportunity to fully litigate [its] case." *See id.* Finally, and most importantly, there was nothing preventing Hanson from making a motion to dismiss at trial on the issue of duty, thus preserving this issue for appeal. "Consequently, the

1. *See also Lama v. Borras*, 16 F.3d 473, 476 n. 5 (1st Cir.1994); *Black v. J.I. Case Co.*, 22 F.3d 568, 570–72 (5th Cir.1994); *Watson v. Amedco Steel, Inc.*, 29 F.3d 274, 276–78 (7th Cir.1994); *Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.*, 19 F.3d 431, 434 (8th Cir.1994); *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir.1990); *Holley v. Northrop Worldwide Aircraft Servs.*, 835 F.2d 1375, 1377–78 (11th Cir.1988); *Locricchio v. Legal Servs. Corp.*, 833 F.2d 1352, 1358–59 (9th Cir.1987); *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573–74 (Fed.Cir.1986); *Senza–Gel Corp. v. Seiffhart*, 803 F.2d 661, 669 (Fed.Cir.1986); *Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1247 (Colo.1996); *Phillips v. Abel*, 141 Ga.App. 291, 233 S.E.2d 384 (1977) (holding a motion for summary judgment is moot after the evidence has been reviewed in a trial on the merits); *Evans v. Jensen*, 103 Idaho 937, 655 P.2d 454, 459 (Ct.App.1982) (explaining that a final judgment after trial should be tested upon the record made at trial not at the time summary judgment was denied); *Kiesau v. Bantz*, 686 N.W.2d 164, 174 (Iowa 2004) (holding that after a full trial on the merits the denial of summary judgment merges with the trial); *Skowronski v. Sachs*, 62 Mass.App.Ct. 630, 818 N.E.2d 635, 638 n. 5 (2004) (stating that no right to review exists

when case has proceeded to trial on the merits, unless the summary judgment issue was on a different claim than was tried); *Cannon v. Day*, 165 N.C.App. 302, 598 S.E.2d 207, 210 (2004) ("Improper denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of the facts ...." (internal quotation marks omitted)). *But see Ondrusek v. Murphy*, 120 P.3d 1053, 1055–56 & n. 2 (Alaska 2005) (reviewing a summary judgment denial, but noting that although the Alaska Supreme Court "has reviewed summary judgment denials" in the past, it would "give serious consideration in the future to adoption of what seems to be the majority view concerning reviewability of summary judgment denials").

2. *See, e.g., Wiles v. Michelin N. Am., Inc.*, 173 F.3d 1297, 1301 (10th Cir.1999); *Wolfgang v. Mid–America Motorsports, Inc.*, 111 F.3d 1515, 1521 (10th Cir.1997); *Regency Commercial Assocs. v. Lopax, Inc.*, 373 Ill.App.3d 270, 311 Ill. Dec. 636, 869 N.E.2d 310, 320 (2007); *Gallegos v. New Mexico Bd. of Educ.*, 1997–NMCA–040, ¶ 8, 123 N.M. 362, 940 P.2d 468.

trial court's ... denial[ ] of ... summary judgment resulted in no prejudice [and] did not affect the final outcome...." *Id.* Therefore, we do not review the denial of Hanson's motion for summary judgment.

## II.  Jury Instructions

¶ 15 Hanson next argues that the trial court erred by refusing to give its requested jury instruction regarding ITEC's negligent design of the truck's hydraulic system. Hanson requested that the jury be instructed on negligent design law and that ITEC be listed on the special verdict form as a possible negligent party and intervening cause. Hanson submitted Model Utah Jury Instruction (MUJI) 12.16, which provides: "The manufacturer of a product that is reasonably certain to be dangerous if negligently made has a duty to exercise reasonable care in the design of the product, so that the product may be safely used in a manner and for a purpose for which it was made." However, the trial court did not include MUJI 12.16 with the other jury instructions.

¶ 16 We review a challenged jury instruction in context with all other jury instructions provided to the jury. *See Jensen v. Intermountain Power Agency,* 1999 UT 10, ¶ 16, 977 P.2d 474. " 'As we have repeatedly held, if the jury instructions as a whole fairly instruct the jury on the applicable law, reversible error does not arise merely because one jury instruction, standing alone, is not as accurate as it might have been.' " *Id.* (quoting *Bott v. DeLand,* 922 P.2d 732, 741 (Utah 1996)) (citation omitted). A party is entitled to have the jury instructed on its theory of the case if competent evidence is presented at trial to support its theory. *See Van Erickson v. Sorenson,* 877 P.2d 144, 151 (Utah Ct.App.1994). However, it is not entitled to have the jury instructed with any particular wording. *See id.* As long as the instructions, read as a whole, fairly instruct the jury on applicable law, it is not error to refuse a particular instruction. *See id.* (" '[I]t is not error [for the trial court] to refuse a proposed instruction if the point is properly covered in the other instructions.' " (quoting *State v. Sessions,* 645 P.2d 643, 647 (Utah 1982))).

¶ 17 Although MUJI 12.16 was not included in the set of instructions given to the jury, the trial court provided sufficient jury instructions regarding Hanson's claim that ITEC was negligent. For example, in jury instruction 19, the trial court told the jury that Hanson "claim[ed] that other persons are responsible for ... Normandeau's death, including [ITEC] (the manufacturer of the Ryder truck)" and that Hanson "claim[ed] that the negligence of these others was the cause of ... Normandeau's death."

¶ 18 Further, jury instruction 22 read:

Although [ITEC] and Plaintiffs reached a resolution of the issues between them in this case, [ITEC] still remains as a Defendant in this action. Thus, it will be your duty to assess and allocate fault in this matter, whether that allocation be against ... Normandeau and/or Hanson ... and/or against [ITEC]....

And, jury instruction 23 told the jury that "[u]nless otherwise stated, all instructions given [to] you govern the case as to each Defendant. The mere fact that an accident or injury occurred does not support the conclusion that any party was [at] fault or negligent."

¶ 19 The trial court went on to define negligence and comparative negligence without limiting those instructions to Hanson or Normandeau, and without excluding ITEC. Jury instruction 38, on comparative negligence, stated in part:

If you decide that more than one person was responsible for ... Normandeau's death, you must decide each person's percentage of fault. "Fault" means a breach of legal duty and includes negligence. This allocation of fault must be done on a percentage basis, and the total must be 100%. Each person's percentage should be based on how much that person's fault contributed to ... Normandeau's death.

¶ 20 Finally, in jury instruction 45, the court told the jury:

Hanson ... and [ITEC] are corporations and, as such, can act only through their officers and employees, and others designated by it as its agents.

Any act or omission of an officer, employee, or agent of a corporation, in the performance of their [sic] duties or within the scope of the authority of the officer, employees or agent, is the act or omission of the corporation. So, if you find that the preponderance of the evidence shows that an officer, agent, or employee of a particular corporation was negligent in performing his duties or within the scope of this authority, then you must find that particular corporation was negligent.

¶ 21 These instructions, when read in context with the trial court's other jury instructions, adequately informed the jury that it could find that ITEC was at fault in causing Normandeau's death if ITEC had acted negligently. Counsel for Hanson argued to the jury that ITEC was negligent, and the jury rejected those arguments. In answer to the specific question, "Was any fault on the part of [ITEC] a cause of the death of ... Normandeau?" the jury answered, "No." Therefore, we conclude that the trial court did not err in failing to include MUJI 12.16 in the set of instructions provided to the jury because the other instructions, taken as a whole, adequately instructed the jury regarding ITEC's alleged negligence.

¶ 22 Hanson further argues that ITEC should have been listed as a potentially negligent party on the special verdict form. However, ITEC *was* listed as a potentially responsible party on the special verdict form. Specifically, the special verdict form asked the jury, "Was the Defendant [ITEC] strictly liable under the facts of this case?" and "Was any fault on the part of [ITEC] a cause of the death of ..., Normandeau?" The jury answered "No" to each of these questions. We acknowledge that ITEC was listed as a party under a theory of strict liability, and not specifically as a party under a theory of negligence. However, because ITEC was included as a party on the special verdict form and because the jury was asked the general question of whether ITEC was the cause of Normandeau's death and the jury answered "No," we conclude that any error in not listing ITEC as a potentially negligent party was harmless.

### III. Untimely Designation of Expert Witnesses and Plaintiffs' Motion in Limine

¶ 23 Hanson also argues that the trial court abused its discretion in failing to strike Plaintiffs' untimely designation of their towing expert, Jesse A. Enriquez, and that the trial court erred when it granted Plaintiffs' motion in limine, which sought to limit the opinion testimony of Normandeau's supervisor and co-worker. We conclude that both of these rulings were within the trial court's discretion.

¶ 24 First, under the original scheduling order, the parties were to exchange rebuttal expert witnesses by March 11, 2005. The trial court later entered a new scheduling order that gave Hanson until May 31, 2005, to designate its experts. The revised schedule did not contain any date for rebuttal expert designations, and Hanson did not designate any experts before it moved for summary judgment. Plaintiffs claim that Enriquez was a rebuttal expert who was used to respond to Hanson's motion for summary judgment. Upon receiving Enriquez's affidavit, served in conjunction with Plaintiff's opposition to Hanson's motion for summary judgment, Hanson moved to strike the affidavit on the grounds that Enriquez was not timely designated as an expert. After a hearing on the motion, the trial court denied Hanson's motion and allowed Plaintiffs to designate Enriquez. It also allowed Hanson to depose Enriquez and to designate its own towing expert. Hanson then hired LaMar McQuaid, a towing expert, who testified at trial on behalf of Hanson.

¶ 25 We conclude that the trial court was within its discretion to allow Plaintiffs to designate Enriquez as a towing expert and to allow his testimony as a response to Hanson's motion for summary judgment. "A trial court has necessary discretion in managing cases by pretrial scheduling and management conferences." *DeBry v. Cascade Enters.*, 879 P.2d 1353, 1361 (Utah 1994); *see also* Utah R. Civ. P. 16 ("[T]he court, upon its own motion or upon the motion of a party, may conduct a scheduling and management conference."). "Because the

trial judge deals primarily with the parties and the discovery process, he or she has great latitude in determining the most efficient and fair manner to conduct the court's business." *A.K. & R. Whipple Plumbing & Heating v. Aspen Constr.,* 1999 UT App 87, ¶ 36, 977 P.2d 518. This includes "discretion in determining whether a violation of a scheduling order warrants sanction," *id.,* such as striking Enriquez's expert affidavit, *see Utah Dep't of Transp. v. Osguthorpe,* 892 P.2d 4, 6 (Utah 1995) (recognizing that "[t]he striking of pleadings . . . [is one of] the most severe of the potential sanctions that can be imposed upon a . . . party").

¶ 26 Assuming, without deciding, that Plaintiffs' designation of Enriquez as an expert was untimely and that Plaintiffs therefore violated the scheduling order, Hanson was not prejudiced by any such untimely designation because the trial court gave Hanson an opportunity to depose Enriquez and to designate its own towing expert. *See, e.g., A.K. & R. Whipple Plumbing,* 1999 UT App 87, ¶ 37, 977 P.2d 518. Moreover, the designation of the towing experts came well in advance of trial. Therefore, the trial court did not err in allowing Plaintiffs' designation of Enriquez as a towing expert. *See id.*

¶ 27 Hanson further argues that the trial court erred when it granted Plaintiffs' motion in limine, which sought to limit the opinion testimony of Normandeau's supervisor and co-worker. However, Hanson failed to provide an adequate record to enable this court to review the trial court's ruling. In their motion in limine, Plaintiffs argued that the trial court should preclude Normandeau's supervisor and co-worker from expressing opinions about the cause of and the responsibility for Normandeau's accident. Plaintiffs asserted that Normandeau's supervisor and co-worker were lay witnesses whose opinions were based on personal perception, lacked foundation, required speculation, stated legal conclusions, invaded the province of the jury, and would not assist the trier of fact. Hanson responded by arguing that Normandeau's supervisor and co-worker provided expert testimony and that Plaintiffs are not prejudiced by these individuals providing such expert testimony.

¶ 28 On January 30, 2006, a hearing was held concerning Plaintiffs' motion in limine. However, the record before us provides no transcript of that hearing. Instead, we are only provided with the minutes, which state that a motion in limine was argued and that "[t]he [c]ourt rule[d] as stated on the record." This statement does not provide us with the facts the trial court considered in making its ruling, the trial court's basis for granting Plaintiffs' motion in limine, or the trial court's findings and legal conclusions. The only information concerning Plaintiffs' motion in limine that the record provides is that the trial court did, in fact, grant Plaintiff's motion.

¶ 29 If a party fails to provide an adequate record, we will assume the regularity of the proceedings below. *See State v. Miller,* 718 P.2d 403, 405 (Utah 1986) (per curiam). Moreover, we note that "'a trial judge is accorded broad discretion in determining how a trial shall proceed in his or her courtroom.'" *Tschaggeny v. Milbank Ins. Co.,* 2007 UT 37, ¶ 16, 163 P.3d 615 (quoting *University of Utah v. Industrial Comm'n,* 736 P.2d 630, 633 (Utah 1987)). As such, we conclude that the trial court was within its discretion when it granted Plaintiffs' motion in limine regarding the testimony of Normandeau's supervisor and co-worker. *See id.* (holding that "a trial court is free . . . to alter a previous in limine ruling, . . . [and to] exercise its discretion to disregard motions to reconsider prior in limine rulings" (internal quotation marks omitted)).

IV. Improper Closing Argument

¶ 30 Finally, Hanson argues that the trial court erred when it denied Hanson's motion for a new trial because of allegedly improper and prejudicial remarks Plaintiffs' counsel made in his closing arguments. However, Hanson did not timely object to these statements at trial. "Absent an objection by [a] defendant, we will presume waiver of all arguments regarding the appropriateness of counsel's statements unless the error falls into the category of plain error." *Heslop v. Bank of Utah,* 839 P.2d 828, 839 (Utah 1992). Hanson does not argue plain error, nor do we find any plain error regarding

Plaintiffs' counsel's closing argument. Therefore, we do not address Hanson's argument that Plaintiffs' attorney made improper statements during closing argument.

## CONCLUSION

¶ 31 Regarding Hanson's argument that the trial court erred in denying its summary judgment motion, we conclude that such a denial is not appealable under the facts of this case. Therefore, we do not address it. We further conclude that the trial court's jury instructions were proper and adequately informed the jury of the law concerning Hanson's defense. Moreover, we conclude that the trial court did not abuse its discretion when it allowed the designation of Plaintiffs' expert and granted Plaintiffs' motion in limine. Finally, we do not address Hanson's claim that Plaintiffs' counsel's closing arguments were improper because Hanson failed to object to them at trial.

¶ 32 Accordingly, we affirm.

¶ 33 I CONCUR: JAMES Z. DAVIS, Judge.

ORME, Judge (concurring in part and dissenting in part):

¶ 34 I concur in the balance of the opinion, but I disagree with my colleagues that there is appellate jurisdiction over only some denials of summary judgment. I believe that once a final judgment has been entered, we have *jurisdiction* over appeals questioning the denial of a motion for summary judgment regardless of the basis for the denial, although I recognize that such appeals will ordinarily be for naught as a practical matter.

¶ 35 Whatever may be the rule in other jurisdictions, Utah recognizes that when a party complies with rule 3(d) of the Utah Rules of Appellate Procedure, and designates the final judgment in its notice of appeal, it is "not precluded from alleging errors in any intermediate order involving the merits or necessarily affecting the judgment as long as such errors were properly preserved." [1] *Zions First Nat'l Bank v. Rocky Mountain Irrigation, Inc.*, 931 P.2d 142, 144 (Utah 1997). On the contrary, "[w]hen an appellant files a notice of appeal from a final judgment, he may, in his opening brief, challenge all nonfinal prior orders and happenings which led up to that final judgment." *Id.* (citation and internal quotation marks omitted). Professors Wright and Miller specifically recognize that this familiar precept applies to denials of summary judgment. *See* 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2715, at 264–66 (3d ed. 1998) ("[After] entry of judgment following the trial on the merits, . . . the party who unsuccessfully sought summary judgment may argue that the trial court's denial of the Rule 56 motion was erroneous.") (footnotes omitted). [2]

1. I readily agree with the majority that a denial of summary judgment, an intermediate order, is not immediately appealable as a matter of right. *See Wayment v. Howard*, 2006 UT 56, ¶ 20 & n. 13, 144 P.3d 1147. While a party may petition to have the denial considered on interlocutory appeal, it is not required to do so. *See generally* Utah R.App. P. 5(a). Utah has a long history of discouraging piecemeal appeals and favoring a single appeal from a single action, *see, e.g., Anderson v. Wilshire Invs., LLC*, 2005 UT 59, ¶ 9, 123 P.3d 393; *Miller v. USAA Cas. Ins. Co.*, 2002 UT 6, ¶ 68, 44 P.3d 663; *Kennedy v. New Era Indus., Inc.*, 600 P.2d 534, 535 (Utah 1979); *O'Gara v. Findlay*, 7 Utah 2d 218, 321 P.2d 953, 953–54 (1958), and only rarely will an interlocutory appeal be granted from the denial of a summary judgment motion. When leave is not sought or when it is sought but denied, the question of whether the intermediate order was erroneous does not vaporize but is simply pushed forward for possible consideration after the entry of final judgment. Adherence to this precept both serves the policy in favor of one appeal per case and assures litigants there is no need to seek appeal of every intermediate disposition along the way, as their right to fuss about such dispositions will be fully preserved for appeal following the entry of final judgment.

2. The majority relies upon *Wayment v. Howard*, 2006 UT 56, 144 P.3d 1147, in concluding that in Utah "only the legal issues decided by the denial of summary judgment that prevented a party from dealing with the issue at trial will be considered after a trial on the merits." Lead Opinion ¶ 13. In *Wayment*, the Utah Supreme Court held that "only facts and legal theories that were *foreclosed* [by a summary judgment ruling] from being addressed at trial may be heard on appeal," 2006 UT 56, ¶ 20, 144 P.3d 1147 (emphasis in original), but it cited no authority in support of that pronouncement, it did not characterize the limitation as jurisdictional, and it did not cross-reference the general rule

¶ 36 What I have said goes only to jurisdiction—to the power of an appellate court to consider all interlocutory orders on appeal from a final judgment, including interlocutory orders denying summary judgment motions. I do not mean to suggest that such challenges are likely to be successful. Indeed, as a practical matter, it will be hard for a party to argue entitlement to judgment as a matter of law when judge or jury, having heard all the evidence and seen live witnesses, actually awarded judgment to the other side. In such a case, the appealing party is fighting an impossible battle in the absence of a mistake of law impacting the judgment entered. Even in the case where denial of a summary judgment motion turns exclusively on a legal issue, it will ordinarily be more efficient to reassert that legal issue in the context of a motion to dismiss at the close of the plaintiff's case, a motion for directed verdict, a challenge to the trial court's instructions to the jury, etc.—and to seek appellate consideration of the trial court's pertinent rulings—than to overtly challenge the trial court's earlier denial of summary judgment. But such barriers to success on appeal from a denial of summary judgment are practical, not jurisdictional. Accordingly, I believe that Hanson was free to raise its challenge to the trial court's denial of its motion for summary judgment and that we are obliged to consider that challenge on its merits, such as they are.

¶ 37 On the merits, I cannot say that the trial court erred in denying Hanson's summary judgment motion. Hanson's moving papers failed to establish, as a matter of law, that Hanson owed no duty of care to Normandeau, that Hanson's repair did not proximately cause Normandeau's death, or that Normandeau was negligent in preparing the truck for towing. Accordingly, the trial court ruled correctly in denying the motion.

set forth in *Zions First National Bank v. Rocky Mountain Irrigation, Inc.,* 931 P.2d 142 (Utah 1997), which I quote in ¶ 35 of this opinion. Thus, it seems entirely possible that the Court had in mind the same kind of practical inefficacy of such a challenge on appeal that I readily recognize, rather than a true jurisdictional bar.

The majority also relies upon *Estate Landscape & Snow Removal Specialists, Inc. v. Mountain States Telephone & Telegraph Co.,* 844 P.2d 322 (Utah 1992), where the Supreme Court did review a denial of summary judgment, *see id.* at 325–31, but such reliance is misplaced. The Supreme Court's only relevant references were with respect to its determination of the appropriate standards of review. *See id.* at 326 ("Because he was dealing with undisputed facts, [the trial judge]'s denial of summary judgment amounted to a ruling of law, which we review for correctness[.]").